Mark F. Lovell, CA Bar No. 246652
mark.lovell@ogletree.com
Carlos Bacio, CA Bar No. 328466
carlos.bacio@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA 92626
Telephone: 714-800-7900
Facsimile: 714-754-1298

Attorneys for Defendant Airport Terminal Services, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| JOSE MARTINEZ, an individual<br><br>Plaintiff,<br><br>v.<br><br>AIRPORT TERMINAL SERVICES, INC., A MISSOURI CORPORATION; AND DOES 1 THROUGH 20, INCLUSIVE,<br><br>Defendant. | Case No. 8:20-cv-426<br><br>**DECLARATION OF MARK F. LOVELL IN SUPPORT OF DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**<br><br>[Filed concurrently with Notice of Removal; Civil Cover Sheet; Certificate of Interested Parties; Corporate Disclosure Statement; Declaration of Brandy Wallace; and Notice of Related Cases]<br><br>State Court<br>Action Filed: December 30, 2019<br>Trial Date: None Set<br>Judge: Hon. JudgeName |

41949993_1.docx

DECLARATION OF MARK F. LOVELL IN SUPPORT OF DEFENDANT
AIRPORT TERMINAL SERVICES, INC.'S NOTICE OF REMOVAL

I, Mark F. Lovell, certify and declare as follows:

1. I am an attorney duly licensed to practice before this Court and before all of the courts of the State of California. I am an attorney with the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., counsel of record for Defendant Airport Terminal Services, Inc. (hereinafter "Defendant") in this action. I submit this declaration in support of Defendant's Notice of Removal of Civil Action under 28 U.S.C. §§ 1332 and 1441(b). If called as a witness, I could and would testify competently testify to the facts set forth herein.

2. Attached hereto as **Exhibit "A"**[1] is a true and correct copy of the jury verdict in the matter of *Romero v. Leon Max, Inc*., 2009 WL 5258439.

3. Attached hereto as **Exhibit "B"** is a true and correct copy of the jury verdict in the matter of *Amigon vs. Cobe Color Cosmetics*, 2009 WL 7497138.

4. Attached hereto as **Exhibit "C"** is a true and correct copy of the jury verdict and Special Verdict Form – Phase II in the matter of *Martinez v. Rite Aid, et. al.* (BC401746) 10-JV_2044 (October 5, 2010).

5. Attached hereto as **Exhibit "D"** is a true and correct copy of the jury verdict in the matter of *Espinoza v. County of Orange*, 2009 WL 6323832.

6. Attached hereto as **Exhibit "E"** is a true and correct copy of the jury verdict in the matter of *Hernandez v. Regents of the University of California*, 2009 WL 6045700.

7. Attached hereto as **Exhibit "F"** is a true and correct copy of the jury verdict in the matter of *Weyhe v. Wal-Mart Stores, Inc*., 2010 WL 3411462.

8. Attached hereto as **Exhibit "G"** is a true and correct copy of the jury verdict and Special Verdict Form in the matter of *Anderson v. American Airlines, Inc*., N.D. Cal., No. 3:05-cv-0429 (2008).

41949993_1.docx

---

[1] Defendant requests the Court take judicial notice of the facts set forth in Exhibits A through Q pursuant to Fed. R. Evid. 201.

1

**DECLARATION OF MARK F. LOVELL IN SUPPORT OF DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S NOTICE OF REMOVAL**

9.      Attached hereto as **Exhibit "H"** is a true and correct copy of the jury verdict, Special Verdict Form and Judgment Following Jury Verdict in *Lefkir v. Rancho Los Amigos/County of Los Angeles* (BC412351) 10-JV_1877 (2010).

10.     Attached hereto as **Exhibit "I"** is a true and correct copy of the Second Amended Judgment In Favor of Plaintiff and Third Amended Judgment In Favor of Plaintiff in the matter of *Martin v. Arrow Electronics, Inc.*, U.S.D.C. Central District of California Case No. 04-1134.

11.     Attached hereto as **Exhibit "J"** is a true and correct copy of the Judgment on Special Verdict in the matter of *Lee v. TRW Inc., et al.*, U.S.D.C. Central District of California Case No. 02-05172.

12.     Attached hereto as **Exhibit "K"** is a true and correct copy of the Judgment on Special Verdict in the matter of *Kruisheer v. Toys 'R' Us – Delaware, Inc.*, U.S.D.C. Central District of California Case No. 05-3425.

13.     Attached hereto as **Exhibit "L"** is a true and correct copy of the Special Jury Verdict Form, Judgment, Judgment on Special Verdict, Order Resolving Motion for Statutory Attorney's Fees and Taking Motion Off-Calendar and Jury Verdict in the matter of *Peacock v. Quest Diagnostics, et al.*, U.S.D.C. Central District of California Case No. 09-09206.

14.     Attached hereto as **Exhibit "M"** is a true and correct copy of the jury verdict in the matter of *Vo v. Valley Dodge Inc.*, (L.A. Superior Court BC388059), 2012 WL 1707645.

15.     Attached hereto as **Exhibit "N"** is a true and correct copy of the jury verdict in the matter of *Cortes v. Montebello Unified School Dist.*, (L.A. Superior Court BC359419), 2008 WL 3251449.

16.     Attached hereto as **Exhibit "O"** is a true and correct copy of the jury verdict in the matter of *Ismen v. Beverly Hospital*, (L.A. Superior Court BC366198), 2008 WL 760702.

41949993_1.docx

DECLARATION OF MARK F. LOVELL IN SUPPORT OF DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S NOTICE OF REMOVAL

17.    Attached hereto as **Exhibit "P"** is a true and correct copy of the $1,514,140.00 fee award in *Beasley v. East Coast Foods, Inc*., Case No. BC509995 (Los Angeles County Sup. Ct.).

18.    Attached hereto as "**Exhibit Q**" is a true and correct copy of a relevant excerpt from the 2019 Judicial Caseload Profile for the Central District of California, which is available on the website, http://www.uscourts.gov.

19.    I have practiced employment law since 2006.  Based on my experience, I anticipate that Defendant will take Plaintiff's deposition and potentially others in this matter.   In addition, I anticipate that Defendant will file a motion for summary judgment.  Based on my experience, attorneys' fees in California Fair Employment and Housing Act cases, such as this one, often and routinely exceed $75,000.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on this 2nd day of March 2020, in Costa Mesa, California.



Mark F. Lovell

41949993_1.docx

Case No. 8:20-cv-426

DECLARATION OF MARK F. LOVELL IN SUPPORT OF DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S NOTICE OF REMOVAL

# EXHIBIT A

Westlaw.

2 Trials Digest 13th 21                                                                 Page 1

2 Trials Digest 13th 21 (Cal.Superior), 2009 WL 5258439

Copyright (c) 2012 Thomson Reuters/West

Superior Court, Los Angeles County, California.

Romero vs. Leon Max Inc.

**TOPIC:**
Synopsis: Employee alleges Labor Code violations
Case Type: Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Retaliation;
Labor & Employment; Disability/Medical Condition; Labor & Employment; Discrimination; Labor & Employment; Gender; Labor & Employment; Harassment-General; Labor & Employment; Violation of Public Policy;
Labor & Employment; Wage Disputes

DOCKET NUMBER: BC400145

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: November 2, 2009

JUDGE: Mary Ann Murphy

**ATTORNEYS:**
Plaintiff: Keith A. Fink, Fink & Associates, Los Angeles; Sarah E. Hernandez, Fink & Associates, Los Angeles;
Brendan Y. Joy, Fink & Associates, Los Angeles; Hasti Omrani, Fink & Associates, Los Angeles.
Defendant: John L. Barber, Lewis Brisbois Bisgaard & Smith, Los Angeles; Tracy Wei Constantino, Lewis Brisbois Bisgaard & Smith, Los Angeles; Betsy Johnson, Epstein, Becker & Green, Los Angeles; Martin C. Washton, Towle Denison Smith, Los Angeles; Amanda R. Washton, Towle Denison Smith, Los Angeles.

**SUMMARY:**
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $56,359

Range: $50,000-$99,999

$6,359 past economic; $50,000 punitive damages.
Trial Type: Jury
Deliberations: Not reported.
Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

2 Trials Digest 13th 21                                                                                    Page 2

TEXT:
CASE INFORMATION
FACTS/CONTENTIONS

According to court records: Plaintiff Alexa Romero, a salesperson at defendant Leon Max Inc. dba Max Studio
Outlet in Los Angeles, California, alleged that she was repeatedly discriminated against due to a physical disab-
ility that limited her ability to walk and stand for prolonged periods of time. She further alleged that, instead of
accommodating her repeated requests, defendant spurned her requests until she could no longer stand the pain;
she informed defendant that she could not work in violation of her medical restrictions.
Defendant allegedly dealt with plaintiff's complaints of disability discrimination by terminating her by creating a
resignation letter on plaintiff's behalf. Plaintiff did not resign her employment but was terminated due to her re-
peated complaints that she be free from disability discrimination.
Plaintiff also sued defendant Marcia Kaye for assault, battery, and intentional infliction of emotional distress.
Defendants denied liability and contended that plaintiff suffered no damages as a result of anything they did.

CLAIMED INJURIES
According to court records:
Emotional distress.

CLAIMED DAMAGES
According to court records:
$21,840 plus commissions, amount lost before finding comparable employment.

SETTLEMENT DISCUSSIONS
According to court records:
Not reported.

COMMENTS
According to court records:
The complaint was filed on October 16, 2008. The insurance carrier was Travelers Casualty & Surety Company
of America.

Trials Digest, A Thomson Reuters/West business.

Los Angeles County Superior Court/Downtown

2 Trials Digest 13th 21 (Cal.Superior), 2009 WL 5258439

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT B

Westlaw.

11 Trials Digest 14th 17                                                                                 Page 1

11 Trials Digest 14th 17 (Cal.Superior), 2009 WL 7497138
For Opinion See 2009 WL 6058108 (Trial Order), 2009 WL 6058107 (Trial Order)

Copyright (c) 2012 Thomson Reuters/West

Superior Court, Los Angeles County, California.

Amigon vs. Cobe Color Cosmetics

TOPIC:
Synopsis: Worker fired after pregnancy-related sick leave
Case Type: Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Discrimination;
Labor & Employment; Gender; Labor & Employment; Disability/Medical Condition; Labor & Employment; Re-
taliation

DOCKET NUMBER: BC378685

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: April 15, 2009

JUDGE: Rex Heeseman

ATTORNEYS:
Plaintiff: David A. Cohn, Kesluk & Silverstein, Los Angeles; Douglas N. Silverstein, Kesluk & Silverstein, Los
Angeles.
Defendant: Edward M. Chavez, Chavez Law Firm, Cerritos.

SUMMARY:
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $78,000

Range: $50,000-99,999

$1,000 economic damages; $25,000 non-economic damages; $52,000 punitive damages. The jury found defend-
ant's motivating reason for plaintiff's termination was that she took leave related to her pregnancy.
Trial Type: Jury
Deliberations: Not reported.
Jury Poll: Not reported.

EXPERTS:
Plaintiff: Not reported.
Defendant: Not reported.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

TEXT:
CASE INFORMATION
FACTS/CONTENTIONS

According to court records: Plaintiff Deyanira Amigon required time off of work because of complications re-
lated to her pregnancy. Plaintiff suffered a miscarriage April 8, 2007, and her physician prescribed time off and
bed rest through April 23, 2007. Plaintiff claimed that when she attempted to return to work, her supervisor told
her there was no work for her and that she was terminated.
Plaintiff alleged disability discrimination, failure to engage in interactive process, failure to accommodate,
gender discrimination, retaliation, failure to maintain an environment free from discrimination, and wrongful
termination.
Defendant Cobe Color Cosmetics Inc. denied it told plaintiff she could not return to work. Defendant further
denied defendant caused plaintiff to suffer emotional distress, loss of wages, or any other damages.

CLAIMED INJURIES
According to court records:
Emotional distress.

CLAIMED DAMAGES
According to court records:
Not reported.

SETTLEMENT DISCUSSIONS
According to court records:
Not reported.

COMMENTS
According to court records:
The complaint was filed on November 19, 2007.

Trials Digest, A Thomson Reuters/West business

Los Angeles County Superior Court/Downtown

11 Trials Digest 14th 17 (Cal.Superior), 2009 WL 7497138

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT C

# Daily Journal

## Classifieds/Jobs/Office Space : Experts/Servic

| MONDAY | TUESDAY | WEDNESDAY | THURSDAY | TODAY |

### SEARCH/RESULTS

Search >>

Bookmark

| | | |
|---|---|---|
| Disability Discrimination V   $8,200,000 | For the plaintiff: Carney R. Shegerian James Urbanic For the defendant: Jonathan A Klein Thomas K. Hockel Annmarie Liermann | L.A. Superior Hon. Susan Bryant-Deason |

**RESULT DATE:** Oct. 5, 2010

Maria C. Martinez v. Rite Aid, Kien Chu (BC401746) 10-JV_2044

**FURTHER DESCRIPTION:** Retaliation

**VERDICT:** $8,200,000

**ATTORNEY:** Plaintiff - Carney R. Shegerian (Shegerian & Associates, Santa Monica); James Urbanic (Urbanic & Associates, Los Angeles). Defendant - Jonathan A Klein (Kelly Hockel & Klein P.C., San Francisco); Thomas K. Hockel, Annmarie Liermann (Kelly, Hockel & Klein, PC, San Francisco).

**FACTS:** In 1983, plaintiff Maria Martinez began working for a Thrifty Drug store, which became a Rite-Aid in 1998. In 2003, Martinez took a series of disability leaves of absence, after she began having symptoms of a psychiatric illness.

Martinez's employment was terminated in 2007. Martinez filed suit against Rite-Aid, alleging disability discrimination and retaliation.

**CONTENTIONS:** PLAINTIFF'S CONTENTIONS: Martinez alleged after she returned from leave, her supervisors constantly reprimanded and harassed her, calling her a "basket case." She further contended that, after being moved from one of Rite Aid's stores in Pasadena to Arcadia, her boss falsely accused her of giving medication to a customer, calling her "bipolar" and "crazy." Martinez stated that her supervisor, Kien Chau, and other employees rebuffed her claim that a manager had touched her inappropriately outside of work in 2006. She contended that Rite Aid failed to take sufficient action against the manager when she filed a complaint against him.

DEFENDANT'S CONTENTIONS: Rite-Aid alleged that Martinez had a poor work history, including arguing with supervisors. Rite-Aid contended that Martinez was issued a written warning in 2005 for counseling a customer about using medication, in violation of the law, which limits such a task to pharmacists. Rite-Aid claimed Martinez was terminated for poor work performance and attitude issues.

**DAMAGES:** Martinez sought damages for discrimination, retaliation, and intentional infliction of emotional distress.

**JURY TRIAL:** Length, 22 days; Deliberation, 1.5 days (liability phase); 2.5 hours (damages phase)

**RESULT:** The jury rendered a verdict in favor of Martinez, finding defendants liable for disability, medical leave and sexual harassment retaliation in violation of public policy and invasion of privacy, awarding her $3,400,000 in compensatory damages and $4,800,000 in punitive damages. The jury also found Chau individually liable for intentional infliction of emotional distress, awarding Martinez an additional $50,000.

**OTHER INFORMATION:** FILING DATE: November 2008.

Exhibit C, Page 11

 **executive presentations**

*complete trial services*


Rick Kramer
President

## PROUDLY CONGRATULATES

### Grassini & Wrinkle





*Donald G. Liddy, Esq.*        *Jamie M. Kurtz, Esq.*

For their $1.5 million intersection accident/future hip replacement unanimous jury verdict

***Casanova v. Estate of Finnegan***
**Ventura County Superior Court - Simi Valley**

HOME  :  CLASSIFIEDS  :  EXPERTS/SERVICES  :  CLE  :  DIRECTORIES  :  SEAR

$5\uparrow$

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

OCT 05 2010

John Clarke, Executive Officer/Clerk
By_____ Deputy
ATOY WILSON

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| MARIA C. MARTINEZ and FERNANDO MARTINEZ, | Case No.: BC 401 746 |
| Plaintiffs, | **SPECIAL VERDICT—PHASE II** |
| vs. | |
| RITE AID CORPORATION, KIEN CHAU, | |
| Defendants. | Dept.: 52 |

SPECIAL VERDICT—PHASE II

Exhibit C, Page 14

## SPECIAL VERDICT—PHASE II

We, the jury in the above action, find the following Special Verdict on the questions submitted to us:

**Question No. 1:** Shall punitive damages be assessed against defendant Rite Aid Corporation in favor of Maria Martinez?

Answer "yes" or "no"

Maria Martinez:                    _YES_

If you answer "yes," go to the next question.  If you answer "no," sign and return the verdict.

**Question No. 2:** We assess punitive damages against defendant Rite Aid Corporation in favor of plaintiff Maria Martinez in the following amount:

Answer:  Maria Martinez:        $ _4,800,000 —_

We, the jury in the above-entitled case, by answering the above questions consistently with the jury instructions issued to us in this case, hereby render this Special Verdict.

Dated: _10 - 5 - 2010_

_[signature]_
Foreperson

-2-
SPECIAL VERDICT—PHASE II

# EXHIBIT D

Westlaw.

2009 WL 6451958 (Cal.Superior)                                                           Page 1

**H**

Superior Court of California,
Central Justice Center.
Orange County
Ralph ESPINOZA, Plaintiff,
v.
COUNTY OF ORANGE, a governmental entity; Rodney Phillips, an individual; Minh Pham, an individual; Juan Chavez, an individual; Rick Sosa, an individual, Defendants.
No. 30-2008 00110643.
October 8, 2009.

Judgment on Jury Verdict

Timothy B. McCaffrey, Jr. (S.B. #192114), Natasha R. Chesler (S.B. #227540), The Law Offices of Timothy B. McCaffrey, Jr., A Professional Corporation, 11377 West Olympic Boulevard, Suite 500, Los Angeles, California 90064, Telephone: (310) 880-6407, Facsimile: (310) 882-6359, E-Mail: tmccaffrey @tbmlaw.net, Attorneys for Plaintiff, Ralph Espinoza.

Hon. Derek W. Hunt, Judge of the Superior Court.
Dept. C-24

Date: October 5, 2009

Time: 8:30 a.m.

Dept.: C-24

Action Filed: August 15, 2008

Trial Date: September 21, 2009

This action came on regularly for trial beginning on September 21, 2009, in Department C-24 of the Orange County Superior Court, the Honorable Derek W. Hunt presiding. Plaintiff Ralph Espinoza appearing by The Law Offices of Timothy B. McCaffrey, Jr., Timothy B. McCaffrey, Jr. and Natasha R. Chesler, and defendant County of Orange by Lewis, Brisbois, Bisgaard & Smith, Nancy E. Zeltzer and Stefanie K. Vaudreuil. A jury of fourteen persons (including two alternates) was regularly impaneled and sworn. Witnesses were sworn and testified. After hearing the evidence and arguments of counsel, the jury was duly instructed by the Court and the cause was submitted to the jury in two phases - Phase I (liability) and Phase II (damages). Following Phase I, there was a verdict in favor of Plaintiff Ralph Espinoza on his claims for disability harassment and failure to prevent harassment in violation of the California Fair Employment and Housing Act ("FEHA"). The parties then presented additional witnesses and evidence for Phase II. Thereafter, the jury deliberated and returned into court with its verdict on October 7, 2009, as follows:

Plaintiff Ralph Espinoza is entitled to judgment against defendant County of Orange on his claims of disability harassment and failure to prevent harassment in violation of the FEHA in the following sums:
*Economic Damages*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

2009 WL 6451958 (Cal.Superior)                                                    Page 2

| | |
|---|---|
| Past medical expenses: | $700.00 |
| Lost earnings: | $320,000.00 |

*Non-Economic Damages*

| | |
|---|---|
| Mental distress: | $500,000.00 |
| TOTAL: | $820,700.00 |

It appearing by reason of said verdict that plaintiff Ralph Espinoza is entitled to judgment against defendant County of Orange as set forth herein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of plaintiff Ralph Espinoza against defendant County of Orange in the total sum amount of $820,700.00 with interest thereon at the rate of seven percent (7%) per annum from the date of entry of this judgment until paid in full, plus reasonable attorneys' fees and costs as the prevailing party per statute in the amount of

Dated: October 8 , 009

HON. DEREK W. HUNT

JUDGE OF THE SUPERIOR COURT

### PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 11377 West Olympic Boulevard, Suite 500, Los Angeles, California 90064-1683.

On October 8, 2009,1 served the following document(s) described as [PROPOSED] JUDGMENT ON JURY VERDICT on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

SEE ATTACHED LIST

BY ELECTRONIC MAIL TRANSMISSION: By electronic mail transmission from nchesler @tbmlaw.net on October 8, 2009, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The documents) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 8, 2009, at Los Angeles, California.

<<signature>>

Natasha Chesler

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

2009 WL 6451958 (Cal.Superior)                                                    Page 3

SERVICE LIST

Nancy Zeltzer

Lewis Brisbois Bisgaard & Smith LLP

650 Town Center Drive, Suite 1400

Costa Mesa, California 92626

Email: zeltzer@lbbslaw.com

Espinoza v. County of Orange
2009 WL 6451958 (Cal.Superior ) (Trial Order )

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT E

Westlaw.

50 Trials Digest 13th 7                                                              Page 1

50 Trials Digest 13th 7 (Cal.Superior), 2010 WL 5124845
For Opinion See 2010 WL 3723792 (Trial Order), 2010 WL 3723791 (Trial Order), 2010 WL 8708962 (Trial
Order)

Copyright (c) 2012 Thomson Reuters/West

Superior Court, Alameda County, California.

Hernandez vs. The Regents of the University of California

TOPIC:
Synopsis: Professor fired after review claims disability discrimination
Case Type: Labor & Employment; Disability/Medical Condition; Labor & Employment; Discrimination; Labor
& Employment; Race/National Origin; Labor & Employment; Retaliation

DOCKET NUMBER: RG06272564

STATE: California
COUNTY: Alameda

Verdict/Judgment Date: June 29, 2010

JUDGE: Winifred Y. Smith

ATTORNEYS:
Plaintiff: Dan Siegel, Siegel & Yee, Oakland; Anne Butterfield Weills, Siegel & Yee, Oakland.
Defendant: Paula Kutansky-Brown, Gordon & Rees, San Francisco; Michael A. Laurenson, Gordon & Rees, San
Francisco; Michael T. Lucey, Gordon & Rees, San Francisco.

SUMMARY:
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $266,347

Range: $200,000-499,999

$176,347 economic loss; $90,000 non-economic loss. The court denied plaintiff's motion for injunctive relief
seeking reinstatement or front pay in lieu of reinstatement.
Trial Type: Jury
Deliberations: Not reported.
Jury Poll: Not reported.

EXPERTS:
Plaintiff: Peter Edgelow, Ph.D., physical therapist, Hayward, (510) 732-7881.; Wladislaw Ellis, M.D., physician,
Berkeley, (510) 849-4703.; Dwight Jennings, D.D.S., dentist/TMJ specialist, Northern California Cranio-Facial
Center, Alameda, (510) 522-6828.; Tracy A. Newkirk, M.D., neurologist, San Rafael, (415) 258-1838.; Margo

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Rich Ogus, Ph.D., economist, Spectrum Economics Inc., Mountain View, (650) 949-9590.
Defendant: Charles Skomer, neurologist, San Francisco, (415) 923-3164.

TEXT:
CASE INFORMATION
FACTS/CONTENTIONS

According to court records: Plaintiff Nimachia Hernandez began her employment at UC Berkeley on July 1, 2000, as a ladder-rank faculty member in Native-American Studies (NAS), a subgroup of the Ethnic Studies Department (ES).

The hiring of plaintiff and two other Native-American professors had been mandated by former Chancellor Robert Berdahl as a result of a protracted struggle by students and faculty to revitalize the ES and the NAS program.

On July 22, 2003, plaintiff was rear-ended in an automobile accident. She suffered severe injuries and went out on medical leave for several months. On November 5, 2003, Harry Friedman, one of plaintiff's treating physicians, advised UC Berkeley that she should remain off work due to her disabling injuries from the automobile accident. On January 29, 2004, Dwight Jennings, another of plaintiff's physicians, wrote UC Berkeley a letter in which he described the nature of plaintiff's injuries as the basis for his recommendation that she should continue to be off work for a longer, unspecified period of time.

Plaintiff claimed she repeatedly asked for accommodations, which the school failed to provide. Instead, school officials accelerated her Fourth Year Review. Plaintiff said officials threatened to put her on "leave without pay" or reduce her pay if she did not return to full-time work in February and August 2004 and January 2005.

Plaintiff claimed the school refused to pay for her to attend conferences to give presentations and refused to provide her with a half-time graduate student to assist her, as she requested.

Plaintiff said the school refused to provide materials for her Fourth Year Review on March 2, 2005, because the school had not accommodated her.

In April 2005, plaintiff was given five days to respond to the Ad Hoc Committee's report for her Fourth Year Review. On April 13, 2005, plaintiff submitted a binder of materials to the Department for her Fourth Year Review. These materials included documents that addressed the Ad Hoc Committee's negative evaluation, a current curriculum vitae, a book manuscript that was submitted to the University of Nebraska Press, letters from outside evaluators of the book, a prZcis of a second book contract, a book chapter in an edited volume, teaching evaluations, and other research materials.

Plaintiff said that on April 18, 2005, the tenured faculty members of the Department of Ethnic Studies, none of whom were experts on Native-American scholarship, voted on plaintiff's "prospects for tenure." Nine tenured members of the Ethnic Studies faculty said her prospects were "poor," and two that they were "fair." Tenured faculty then voted on the issue of giving plaintiff a terminal year of employment with 12 in favor, one opposed.

Plaintiff claimed that on April 18, 2005, the tenured faculty members of the Department of Ethnic Studies viewed a Power Point presentation by the Coordinator of NAS, Martin Sanchez-Jankowski (non-Native person), which prejudiced the tenured faculty in their deliberations and vote regarding plaintiff's "prospects for tenure." This presentation misrepresented basic facts regarding her work history and health problems at UC Berkeley, and undermined plaintiff's opportunities for tenure. Plaintiff said she was treated differently than non-Native-American faculty in the ES with regard to the criteria for a positive mid-career review. She was subjected to a much higher standard and to a fraudulent presentation of her credentials and work history that she had no opportunity to refute.

In June 2005, a five-person UC Berkeley Ad Hoc Review Committee affirmed the ES's recommendation to ter-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

minate plaintiff and recommended a one-year terminal appointment.

On July 14, 2005, Paul R. Grey, Executive Vice-Chancellor and Provost for the UC Berkeley Campus, terminated plaintiff, echoing the Department and the Ad Hoc Committee by stating that the "principal basis for the negative appraisal of Hernandez's record since her appointment is the relative lack of research productivity and publication." He agreed with the recommendation for a terminal year.

Plaintiff said that since she first requested reasonable accommodation, she has suffered an extremely hostile work environment. On almost a weekly basis, plaintiff was subjected to specific incidents of harassment, intimidation, and/or other manifestations of hostility by individual ES administrators, faculty, and staff.

Plaintiff alleged disability discrimination, national origin and ancestry discrimination, retaliation for opposing discrimination, and failure to prevent discrimination and retaliation against defendant The Regents of the University of California.

Defendant contended it went to extraordinary lengths to accommodate plaintiff, even before her accident, when they allowed her to take half of her first three years off in order to pursue her scholarship. Defendant said it gave plaintiff unprecedented accommodation after the accident, granting her extensive paid medical leave and delaying her mid-career review by a year and a half. Defendant said plaintiff only had to submit what work she should have completed in the three years before her accident, which should not have required any work. However, defendants said plaintiff had done virtually nothing in the previous three years.

CLAIMED INJURIES
According to court records:
Emotional distress.

CLAIMED DAMAGES
According to court records:
Not reported.

SETTLEMENT DISCUSSIONS
According to court records:
Not reported.

COMMENTS
According to court records:
The complaint was filed on May 31, 2006.

Trials Digest, A Thomson Reuters/West business

Alameda County Superior Court/Oakland

50 Trials Digest 13th 7 (Cal.Superior), 2010 WL 5124845

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT F

Westlaw

2010 WL 3411462                                                                          Page 1


2010 WL 3411462 (Cal.Superior)

Copyright (c) 2012 ALM Media Properties, LLC. All Rights Reserved

Superior Court, Sacramento County, California.

John Weyhe v. Wal-Mart Stores, Inc.

No. 34-2008-00030876

DATE OF VERDICT/SETTLEMENT: July 01, 2010

TOPIC: EMPLOYMENT - FAILURE TO ACCOMMODATE - EMPLOYMENT - RETALIATION - EM-
PLOYMENT - WAGES AND HOURS - DISCRIMINATION - DISABILITY - EMPLOYMENT - DISABIL-
ITY DISCRIMINATION
Diabetic Worker Said He Was Fired for Taking Needed Breaks

SUMMARY:
RESULT: Verdict-Plaintiff
Award Total: $400,000
The jury found for Weyhe on all four causes of action for retaliation, failure to prevent retaliation, failure to
provide a reasonable accommodation and failure to engage in the interactive process, and awarded him $400,000
for his past pain and suffering.
The jury denied Weyhe's claim for future pain and suffering. The plaintiff also withdrew his claim for future lost
earnings when it was shown that such damages were going to be significantly reduced to the after acquired evid-
ence doctrine based on omissions in plaintiff's employment application with Wal-Mart.

EXPERT WITNESSES:
Plaintiff: Dorajane Apuna, R.N.; Nursing; Sacramento, CA Roger J. Raimundo, M.D.; Family Medicine; Ro-
seville, CA

ATTORNEYS:
Plaintiff: Mark P. Velez; Velez Law Firm; Rocklin, CA (John Weyhe)

JUDGE: David W. Abbott

RANGE AMOUNT: $200,000-499,999

STATE: California
COUNTY: Sacramento

INJURIES: Weyhe received his final pay in cash.

Facts:

On Aug. 16, 2007, plaintiff John Weyhe, 41, a produce department associate at Wal-Mart store #3712 in Citrus


© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Exhibit F, Page 26

Heights, and a type-1 diabetic, claimed he was given permission by his supervisor to take additional breaks without clocking out to monitor his blood sugar levels, take an insulin shot, or take a break if he felt fatigued. Weyhe claimed his supervisor only asked him that he notify him or another produce department associate when he was going to take additional time.

On June 26, 2008, Weyhe was summoned by Wal-Mart assistant managers, where he was terminated for time theft.

Weyhe sued Wal-Mart Stores Inc. for disability discrimination.

Weyhe had also asserted a claim for harassment against the store manager and for punitive damages against Wal-Mart but these claims were dismissed by the court following a motion for summary adjudication by Wal-Mart.

Weyhe claimed he required four insulin shots per day and a varying number of tests throughout the day to monitor his sugar levels in order to avoid fatigue, loss of motor skills, the ability to concentrate, etc.

Weyhe claimed that although he was named by his supervisor to be trained as a produce supervisor and receiving training to be a supervisor, the assistant managers, one, a former paramedic, placed Weyhe on a "Decision Day" or D-day for "time theft" in March 2008. A D-day is the final step of discipline before termination where the employee must write an "action plan" to improve performance and submit it to management. Weyhe was accused of taking more than an hour break when it should have been a 15-minute break and sitting in the break room for seven minutes before clocking out at his scheduled time.

Weyhe contended he had no other disciplinary problems on his record and that he was forced to have the D-Day because his supervisor told the assistant managers about his condition and need for breaks. Weyhe claimed he went home and wrote an action plan opposing the need for any discipline and once again notified Wal-Mart of his diabetic condition and his need for additional time, but when he presented this action plan to managers, a manager laughed at the letter and threw it to the side and when Weyhe explained his need for additional breaks, the manager proceeded to yell at him and tell him that he had to deal with his medical situation on his own time and that if he was one minute late from a break again he would be fired.

Weyhe claimed the manager then told him to write another action plan letter and dictated the terms of the letter which basically stated that Weyhe was sorry for putting himself in this position, that he would notify a manager before taking a break to monitor his condition, and that he wanted to keep the job because he had another child on the way, which is his seventh, and that after dictating this letter he was sent back to work.

Weyhe claimed that about two weeks after the Action Plan incident with the new "accommodation" in place, he collapsed on the floor while at work because of his diabetic condition. He was helped to the break room by one of the assistant managers and allowed to recuperate before going back to work, but despite this incident, his new accommodation was not questioned or reconsidered.

Weyhe claimed that because of the manager's serious comments about being one minute late and being fired, his stress level increased and pushed his blood sugar levels higher than normal. Weyhe claimed that due to the stress of work, having a new baby on the way, living paycheck to paycheck and having a hard time affording proper foods, he began suffering even more from his diabetes and became more fatigued, had to urinate frequently, and had to check his blood sugar levels more often. As a result, he had to take even more breaks to have the privacy

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Exhibit F, Page 27

to care for his condition.

Weyhe claimed that in order to abide by the manager's demands, he would have to first locate one of the two managers in the entire store, which is more than 100,000 square feet, during the evening shift that he worked, but because of the pressing need to tend to his diabetes or else collapse again and because he was almost always unable to track a manager down, he began taking occasional breaks to monitor his condition.

Plaintiff's counsel argued that Wal-Mart had an Americans with Disabilities Act Reasonable Accommodation Policy, where managers are trained in how to spot a need for an accommodation due to a physical disability and provide that associate with a reasonable accommodation and that the policy calls for filling out the ADA Reasonable Accommodation Packet, which included medical release information, physician's recommendations, etc., and that Weyhe was retaliated against because he opposed Wal-Mart's discriminatory treatment of his diabetic condition. Counsel added that the deviation in Wal-Mart's own policies was a substantial factor in causing Weyhe's harms.

During trial, plaintiff's counsel noted that upper Wal-Mart management admitted that their ADA policy had been in effect since 2004, but was not used one time in the store where Weyhe worked.

The defense argued that Weyhe was terminated for legitimate reasons, which included stealing time unrelated to his diabetic condition and for ignoring the accommodation provided by the store manager.

The defense presented a co-worker who claimed that Weyhe constantly violated Wal-Mart's break policy during his employment, but on cross examination it was discovered that the co-worker was on maternity leave for seven of the roughly 10 months Weyhe worked at Wal-Mart.

Wal-Mart argued and presented evidence that Weyhe had been noticed on numerous occasions roaming around the store while still on the clock and not dealing with issues relating to his medical condition, including socializing with other employees. Wal-Mart management acknowledged Weyhe's need to care for his diabetic condition and advised him that he should take as long as he needed and as frequently as needed to care for his condition, but that the only requirements were that he notify management if he was going to be gone from his department beyond his allotted breaks and that any excess time should not be "on the clock."

The defense claimed a co-manager for the store, who is also a diabetic, spoke to Weyhe and explained that these accommodations were easily achievable. Weyhe only needed to page a manager over the store's intercom system and if he was unable to do so, he was told he could notify management after the fact.

Wal-Mart also presented evidence that Weyhe had been trained in how to adjust his time on the time clock if he was unable to punch out for his medically related breaks in excess of his allotted time, but that Weyhe failed to so on several occasions or to notify management even after these accommodations were provided to him at his D-day session.

Wal-Mart management denied laughing at Weyhe, discarding his action plan or otherwise failing to address his medical needs.

Wal-Mart presented testimony from plaintiff's primary care physician that Weyhe should have been able to care for his diabetes by checking his blood sugar every two hours during his allotted breaks, that he had a history of poor self-care for his condition and that he could typically care for any elevated or decreased blood sugar issues

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

in a matter of a few minutes.

Wal-Mart alleged that Weyhe was ultimately terminated for continuing to take excessive breaks unrelated to his medical condition after he had already been warned that further conduct in this regard would lead to termination. If the excess breaks were due to his medical condition, that time would not be held against him as long as management had some notification of the situation and his time was adjusted accordingly.

Wal-Mart also presented evidence that it had an "open door" policy in place on which Weyhe was trained but that he failed to utilize it or ever complain to anyone in upper management that he was being retaliated against or that his medical needs were not being properly accommodated.

Weyhe claimed he suffered great pain and suffering from the action plan situation and from being terminated. He claimed emotional distress by the inability to find other work, provide adequately for his wife and children and give them adequate "holidays" such as Thanksgiving, Christmas and birthdays. He claimed he also suffered from depression due to the humiliation of being terminated and the disappointment of losing out on potential promotional opportunities which could give his family a better life.

Weyhe's wife testified about his post-termination behavior and the impact the termination had on him.

Weyhe sought recovery for his past pain and suffering and asked the jury to award $2.5 million.

The defense argued Weyhe could have mitigated the damages by finding other work and that Weyhe and his family did not suffer as he indicated because his family brought in a comparable amount of income with Weyhe's disability payments, which began several months after being terminated.

Wal-Mart demonstrated that despite Weyhe's allegation of severe emotional distress after his termination, he never sought any counseling or professional medical assistance even though such services were available to him via his health plan. Wal-Mart also argued that because this was Weyhe's third job in three years, an entry-level position and he had only been there for 10 months, that Weyhe was overstating his emotional distress. Weyhe also admitted that he did not attempt to seek any new work for approximately 18 months after his termination and remains unemployed.

ALM Properties, Inc.

Superior Court of Sacramento County, Sacramento

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 35

2010 WL 3411462 (Cal.Superior)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT G

⌕ Search All Issues    📄 Contents    ◄◄ Back to Search Results

**BNA, Inc.**

## Employment Discrimination
## Verdicts and Settlements

| Case Cite: | Anderson v. American Airlines Inc., N.D. Cal., No. 3:05-cv-0429, 11/5/08 |
|---|---|
| **Cause of Action:** | Disabilities |
| **Counsel:** | |
| **Defendant:** | American Airlines Inc. |
| **Plaintiff:** | Greta Anderson |
| **Tribunal:** | U.S. District Court for Northern District of California |
| **Presiding Judge:** | Susan Illston |
| **Statute Cited:** | California's Fair Employment and Housing Act |
| **Verdict/Settlement :** | Verdict (11/05/2008) |
| **Award Amount $** | $1,468,583 |

**Disabilities**
## American Airlines Loses New Trial Bid
## On $1.2 Million Disabilities Bias Verdict

SAN FRANCISCO--American Airlines Inc. Nov. 5 lost its bid for a new trial on the claim of a 30-year flight attendant awarded $1.2 million for alleged **discrimination** based on perceived mental **disability** (*Anderson v. American Airlines Inc.*, N.D. Cal., No. 3:05-cv-0429, 11/5/08).

Judge Susan Illston of the U.S. District Court for Northern District of California denied American's motions for a new trial and judgment as a matter of law. Substantial evidence supported the jury's verdict that Greta Anderson was capable of performing the essential functions of her job, she said.

Last July, an eight-member jury found for Anderson, who alleged that the airline used pretext to fire her after she complained about a 1995 assault by a passenger who was the wife of a French diplomat. It awarded her $238,333 in economic damages and $1 million in noneconomic damages after finding that American's perception that Anderson had a mental **disability** was a motivating reason for her discharge.

**Substantial Evidence**

Illston also found substantial evidence that the decisionmakers who terminated Anderson had knowledge of her perceived **disability**. American claimed she was fired for insubordination.

American argued unsuccessfully that Anderson was required to provide evidence that she was medically cleared to return to work to prove that she was capable of performing the essential functions of her job. It "relie[d] on unpublished authorities that are not precedential for this Court and that do not support its position," Illston wrote.

The court also rejected the airlines attempt to overturn the $1 million jury award for pain and suffering. That amount, "while high, is not excessive," it held.

But Illston declined to grant a fee enhancement on the $230,250 attorneys' fees awarded to Anderson's counsel. Her contract with her attorneys awarded them 40 percent of the gross

amount recovered, she noted.

Illston also declined to sanction the defendant's failure to produce e-mails between two decisionmakers that Anderson said were referenced in a deposition.

### Airline Will Appeal

American spokesman Tim Wagner said Nov. 11 that the company respects "the jury's decision but we respectfully disagree with the findings and we will appeal." Plaintiffs' counsel could not be reached for comment Nov. 11.

Anderson sued under California's Fair Employment and Housing Act, alleging **discrimination** based on perceived mental **disability** despite her ability to perform the essential functions of her job. She also claimed she was terminated for repeated requests to access her medical records from a company-paid psychiatric exam that preceded her termination.

According to her lawsuit, Anderson was assaulted after trying to defuse a situation between two irate passengers. The following day, a pilot accused her of making a complaint against a gate agent, shook his fist at her, and ordered her off of a plane when it landed in Dallas.

Anderson claimed the flight crew coordinated their written statements and made false reports about the alleged incidents. On at least four separate occasions following the 1995 assault, she said, she was forced into psychiatric counseling as a condition of continued employment without a diagnosis of mental **disability**. Witnesses present for her last flight before the incident praised her abilities and conduct during a medical situation involving a pregnant passenger, the court noted.

*By Joyce E. Cutler*

Contact customer relations at: customercare@bna.com or 1-800-372-1033
ISSN 1521-5288
Copyright © 2008, The Bureau of National Affairs, Inc.
Copyright FAQs | Internet Privacy Policy | BNA Accessibility Statement | License

Reproduction or redistribution, in whole or in part, and in any form,
without express written permission, is prohibited except as permitted by the BNA Copyright Policy,
http://www.bna.com/corp/index.html#V



# Daily Journal

**Classifieds/Jobs/Office Space** : **Experts/Service**

| MONDAY | TUESDAY | WEDNESDAY | THURSDAY | TODAY |
|--------|---------|-----------|----------|-------|

### SEARCH/RESULTS

Search >>

| FEHA | V | $1,005,403 (plus attorney fees) | For the plaintiff:<br>Pamela M. Teren<br>For the defendant:<br>Calvin House | L.A. Superior Central<br>Hon. Elizabeth A. White |
|------|---|-------------------------------|----|----|

**RESULT DATE:** June 15, 2010

Laid Lefkir v. Rancho Los Amigos/County of Los Angeles (BC412351) 10-JV_1877

**FURTHER DESCRIPTION:** Intentional Infliction of Emotional Distress

**VERDICT:** $1,005,403 (plus attorney fees)

**ATTORNEY:** Plaintiff - Pamela M. Teren (Teren Law Group, PC, Redondo Beach). Defendant - Calvin House (Gutierrez, Preciado & House, LLP, Pasadena).

**MEDICAL:** Plaintiff - Anthony E. Reading, Ph.D., psychology, Beverly Hills.

**TECHNICAL:** Plaintiff - Ted Vavoulis, M.S., accounting, Los Angeles.

**FACTS:** Plaintiff Laid Lefkir worked as a licensed vocational nurse for defendant Rancho Los Amigos/County of Los Angeles from 2007, until he left on medical leave on June 30, 2008.

**CONTENTIONS: PLAINTIFF'S CONTENTIONS:** Plaintiff alleged that he was subjected to harassment and discrimination based on his gender, national origin (Algerian), religion (Muslim) and the perception of co-workers that he was gay.

Plaintiff claimed that he complained about this treatment to management, but the problem was not remedied and he suffered retaliation, including further mistreatment, harsher job assignments and hostile treatment as a result of his complaints.

Plaintiff also alleged that his co-workers refused to help him with patients in retaliation for his complaints. Plaintiff alleged that the misconduct caused him to suffer severe emotional distress, which resulted in him needing a medical leave and ultimately resulting in his conclusive discharge in January 2009.

Plaintiff contended that his co-workers' and the County's actions violated the Fair Employment and Housing Act and caused him to suffer severe emotional distress and economic damages as a result of being constructively discharged from his position.

**DEFENDANT'S CONTENTIONS:** Defendant denied all allegations of harassment, discrimination and retaliation and asserted that plaintiff did not complain about any violation of the Fair Employment and Housing Act. Defendant contended that plaintiff's complaints related to personality conflicts with his co-workers and those complaints were properly handled.

Defendant also denied that defendant caused any emotional distress plaintiff suffered. Defendant asserted that plaintiff voluntarily resigned from his position and, as such, suffered no economic harm as a result of defendant's actions.

**JURY TRIAL:** Length, 12 days; Poll, 12-0 (on all counts) except 11-1 (for plaintiff on negligence), 12-0 (damages); Deliberation, six hours

**RESULT:** Plaintiff's verdict for $1,005,403. Plaintiff's motion for attorney fees was granted on Sept. 3, 2010, court awarded fees of $171,918.

Exhibit G, Page 33

United States District Court
• For the Northern District of California

FILED

JUL 1 7 2008

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GRETA L. ANDERSON,

        Plaintiff,

    v.

AMERICAN AIRLINES, INC.,

        Defendant.

_____/

No. C 05-4292 SI

**SPECIAL VERDICT**

We, the jury in the above entitled action, unanimously find the following on the questions submitted to us for determination:

**Question No. 1**:     Did plaintiff Greta Anderson prove, by a preponderance of the evidence, that American Airlines was an employer?

        Yes   X       No _____

If your answer to Question No. 1 was "no," please do not answer any further questions; rather, please go to the end of this verdict form, have the foreperson sign and date it and return it to the Court. Otherwise, please answer the next question.

**Question No. 2**:     Did plaintiff Greta Anderson prove, by a preponderance of the evidence, that Greta Anderson was an employee of American Airlines?

        Yes   X       No _____

If your answer to Question No. 2 was "no," please do not answer any further questions; rather, please go to the end of this verdict form, have the foreperson sign and date it and return it to the Court. Otherwise, please answer the next question.

**Question No. 3**:     Did plaintiff Greta Anderson prove, by a preponderance of the evidence, that

Case 8:20-cv-00426-DOC-DFM    Document 4    Filed 03/02/20    Page 37 of 112    Page ID
#:146
Case3:05-cv-04292-SI    Docume... 95    Filed07/17/08    Page2 of 3

1    American Airlines perceived that Greta Anderson had a mental disability that limited a major life

2    activity?

3          Yes ___X___          No _____

4    If your answer to Question No. 3 was "no," please do not answer any further questions; rather, please

5    go to the end of this verdict form, have the foreperson sign and date it and return it to the Court.

6    Otherwise, please answer the next question.

7

8    **Question No. 4**:          Did plaintiff Greta Anderson prove, by a preponderance of the evidence, that   she

9    was able to perform her essential job duties?

10          Yes ___X___          No _____

11   If your answer to Question No. 4 was "no," please do not answer any further questions; rather, please

12   go to the end of this verdict form, have the foreperson sign and date it and return it to the Court.

13   Otherwise, please answer the next question.

14

15   **Question No. 5**:          Did plaintiff Greta Anderson prove, by a preponderance of the evidence, that

16   American Airlines discharged her from employment?

17          Yes ___X___          No _____

18   If your answer to Question No. 5 was "no," please do not answer any further questions; rather, please

19   go to the end of this verdict form, have the foreperson sign and date it and return it to the Court.

20   Otherwise, please answer the next question.

21

22   **Question No. 6**:          Did plaintiff Greta Anderson prove, by a preponderance of the evidence, that

23   American Airlines' perception that Greta Anderson had a mental disability was a motivating reason for

24   her discharge?

25          Yes ___X___          No _____

26   If your answer to Question No. 6 was "no," please do not answer any further questions; rather, please

27   go to the end of this verdict form, have the foreperson sign and date it and return it to the Court.

28   Otherwise, please answer the next question.

United States District Court
For the Northern District of California

2

Exhibit G, Page 36

**United States District Court**
For the Northern District of California

**Question No. 7:**      Did plaintiff Greta Anderson prove, by a preponderance of the evidence, that Greta Anderson was harmed?

      Yes __X__      No _____

If your answer to Question No. 7 was "no," please do not answer any further questions; rather, please go to the end of this verdict form, have the foreperson sign and date it and return it to the Court. Otherwise, please answer the next question.

**Question No. 8:**      Did plaintiff Greta Anderson prove, by a preponderance of the evidence, that American Airlines' decision was a substantial factor in causing Greta Anderson's harm?

      Yes __X__      No _____

If your answer to Question No. 8 was "no," please do not answer any further questions; rather, please go to the end of this verdict form, have the foreperson sign and date it and return it to the Court. Otherwise, please answer the next question

**Question No. 9:**      What are plaintiff Greta Anderson's damages, calculated in accordance with the instructions and proved by a preponderance of the evidence?

      1.      Non-economic damages (mental and/or emotional pain and suffering):      $ 1,000,000

      2.      Economic damages (reasonable value of lost earnings):      $ 238,333

Dated: July 17, 2008

FOREPERSON

3

# EXHIBIT H

**FILED**
LOS ANGELES SUPERIOR COURT

JUN 15 2010

JOHN A. CLARKE, CLERK

BY A. BARTON, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

LAID LEFKIR,

Plaintiff,

vs.

RANCHO LOS AMIGOS NATIONAL
REHABILITATION CENTER,

Defendant.

Case No. BC412351

SPECIAL VERDICT FORM

We, the jury in the above-entitled case, find the following Special Verdict on the

following questions submitted to us:

**HARASSMENT**

1. Was Laid Lefkir subjected to unwanted harassing conduct in his work

environment because of his gender, national origin, perceived sexual orientation, or

religion?

"Yes" ✓ or "No" ____

If you answer "Yes," then answer question 2. If you answer "No," proceed to

question 7.

Special Verdict Form - 1

Exhibit H, Page 39

2. Was the harassment so severe, widespread, or persistent that a reasonable person in Laid Lefkir's circumstances would have considered the work environment to be hostile or abusive?

Answer "Yes" __✓__ or "No" _____

If you answer "Yes," then answer question 3. If you answer "No," proceed to question 7.

3. Did Laid Lefkir consider the work environment to be hostile or abusive?

Answer "Yes" __✓__ or "No" _____

If you answer "Yes," then answer question 4. If you answer "No," proceed to question 7.

4. Did Rancho Los Amigos/County of Los Angeles supervisors know or should they have known about the conduct?

Answer "Yes" __✓__ or "No" _____

If you answer "Yes," then answer question 5. If you answer "No," proceed to question 7.

5. Did the Rancho Los Amigos/County of Los Angeles fail to take immediate and appropriate corrective action?

Answer "Yes" __✓__ or "No" _____

If you answer "Yes," then answer question 6. If you answer "No," proceed to question 7.

6. Was the harassing conduct a substantial factor in causing harm to Laid Lefkir?

Answer "Yes" __✓__ or "No" _____

Special Verdict Form - 2

Proceed to question 7.

## DISCRIMINATION

7. Did Rancho Los Amigos/County of Los Angeles subject Laid Lefkir to an adverse employment action?

Answer "Yes" ✓ or "No" ____

If you answer "Yes," then answer question 8. If you answer "No," proceed to question 10.

8. Was Laid Lefkir's gender or national origin a motivating reason for the adverse employment action?

Answer "Yes" ✓ or "No" ____

If you answer "Yes," then answer question 9. If you answer "No," proceed to question 10.

9. Was the adverse employment action a substantial factor in causing harm to Laid Lefkir?

Answer "Yes" ✓ or "No" ____

Proceed to question 10.

## RETALIATION

10. Did Laid Lefkir exercise a statutory right or privilege by opposing either: A) the unlawful employment practice of sexual harassment OR B) the unlawful employment practice of discrimination based on national origin OR religion; OR C) the unlawful employment practice of retaliation for complaining about harassment or discrimination.

Answer "Yes" ✓ or "No" ____

Special Verdict Form - 3

If you answer "Yes," then answer question 11. If you answer "No," proceed to question 14.

11. Did Rancho Los Amigos/County of Los Angeles subject Laid Lefkir to adverse employment action?

Answer "Yes" __✓__ or "No" ____

If you answer "Yes," then answer question 12. If you answer "No," proceed to question 14.

12. Was Laid Lefkir's exercise of his statutory right or privilege a motivating reason for the adverse employment action?

Answer "Yes" __✓__ or "No" ____

If you answer "Yes," then answer question 13. If you answer "No," proceed to question 14.

13. Was the adverse employment action a substantial factor in causing harm to Laid Lefkir?

Answer "Yes" __✓__ or "No" ____

Proceed to question 14.

## NEGLIGENCE

14. Did Rancho Los Amigos/County of Los Angeles act negligently by failing to take immediate and appropriate corrective action after its supervisors knew or should have known of conduct that caused a hostile or abusive work environment based on Laid Lefkir's gender, perceived sexual orientation, national origin or religion?

Answer "Yes" __✓__ or "No" ____

Special Verdict Form - 4

If you answer "Yes," then answer question 15. If you answer "No,"proceed to question 17.

15. Did Laid Lefkir suffer harm from a hostile or abusive work environment based on his gender, perceived sexual orientation, national origin or religion?

Answer "Yes" __✓__ or "No" ____

If you answer "Yes," then answer question 16. If you answer "No," proceed to question 17.

16. Was the negligence a substantial factor in causing Laid Lefkir's harm?

Answer "Yes" __✓__ or "No" ____

Proceed to question 17.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

17. Did Rancho Los Amigos/County of Los Angeles engage in outrageous conduct?

Answer "Yes" __✓__ or "No" ____

If you answer "Yes," then answer question 18. If you answer "No," proceed to question 21.

18. Did Rancho Los Amigos/County of Los Angeles intend to cause Laid Lefkir emotional distress, or act with reckless disregard of the probability that Laid Lefkir would suffer emotional distress, knowing that Laid Lefkir was present when the conduct occurred?

Answer "Yes" __✓__ or "No" ____

Special Verdict Form - 5

If you answer "Yes," then answer question 19. If you answer "No," proceed to question 20.

19. Did Laid Lefkir suffer severe emotional distress as a result of a hostile or abusive work environment based on his gender, perceived sexual orientation, national origin or religion?

Answer "Yes" ___✓___ or "No" _____

If you answer "Yes," then answer question 20. If you answer "No," proceed to question 21.

20. Was the conduct of Rancho Los Amigos/County of Los Angeles a substantial factor in causing Laid Lefkir's severe emotional distress?

Answer "Yes" ___✓___ or "No." _____

Proceed to question 21.

21. If you answered "Yes" to question 6, 9, 13, 16, or 20, proceed to question 22. If you answered "No" to, or did not answer, questions 6, 9, 13, 16, and 20, stop here, answer no further questions, and have the presiding juror sign and date this form.

## DAMAGES

22. What are Laid Lefkir's damages?

Past Economic Loss

Lost Earnings                    $ 99,533.00

Medical Expenses            $ 113,430.00

Future Economic Loss

Lost Earnings                    $ 169,726.00

Special Verdict Form - 6

Exhibit H, Page 44

Medical Expenses     $ __122,720.00__

Past Non-economic Loss - including emotional injury, humiliation,

embarrassment, mental pain and suffering $ __400,000.00__

Future Non-economic Loss- including emotional injury, humiliation,

embarrassment, mental pain and suffering $ __100,000.00__

Dated: __6/15/20__

_____
Presiding Juror

Special Verdict Form - 7

Exhibit H, Page 45

48

**FILED**

LOS ANGELES SUPERIOR COURT

JUL 0 8 2010

JOHN A. CLARKE, CLERK

*A. Barton*

BY A. BARTON, DEPUTY

F-0.

TEREN LAW GROUP, p.c.
PAMELA McKIBBIN TEREN, SBN 150042
225 Avenue I, Ste. 203
Redondo Beach, CA 90277
(310) 543-2300

Attorney for Plaintiff
Laid Lefkir

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| LAID LEFKIR, | CASE NO. BC412351 |
| Plaintiffs, | *The Hon. Elizabeth Allen White* [Dept. 48] |
| vs. | |
| RANCHO LOS AMIGOS NATIONAL REHABILITATION CENTER and DOES 1-100, inclusive, | [Proposed] JUDGMENT FOLLOWING JURY VERDICT |
| Defendants. | |
| | Trial:  May  5, 2010 |
| | [Jury Trial Requested] |

-1-

Judgment Following Jury Verdict

Exhibit H, Page 47

On June 15, 2010, the jury, in the above entitled action, returned the following special

Verdict in favor of Plaintiff, Laid Lefkir and against Defendant, Rancho Los Amigos National

Rehabilitation Center/County of Los Angeles:

"We, the jury in the above-entitled case, find the following Special Verdict on the

following questions submitted to us:

## HARASSMENT

1. Was Laid Lefkir subjected to unwanted harassing conduct in his work

environment because of his gender, national origin, perceived sexual orientation, or

religion? **Yes.**

2. Was the harassment so severe, widespread, or persistent that a reasonable

person in Laid Lefkir's circumstances would have considered the work environment to be

hostile or abusive? **Yes.**

3. Did Laid Lefkir consider the work environment to be hostile or abusive? **Yes.**

4. Did Rancho Los Amigos/County of Los Angeles supervisors know or should

they have known about the conduct. **Yes.**

6. Was the harassing conduct a substantial factor in causing harm to Laid Lefkir?

**Yes.**

## DISCRIMINATION

7. Did Rancho Los Amigos/County of Los Angeles subject Laid Lefkir to an

adverse employment action? **Yes.**

-2-
-------------------------
Judgment Following Jury Verdict

Exhibit H, Page 48

8. Was Laid Lefkir's gender or national origin a motivating reason for the adverse employment action?  **Yes.**

9. Was the adverse employment action a substantial factor in causing harm to Laid Lefkir?  **Yes.**

## RETALIATION

10. Did Laid Lefkir exercise a statutory right or privilege by opposing either: A) the unlawful employment practice of sexual harassment OR B) the unlawful employment practice of discrimination based on national origin OR religion; OR C) the unlawful employment practice of retaliation for complaining about harassment or discrimination?
**Yes.**

11. Did Rancho Los Amigos/County of Los Angeles subject Laid Lefkir to adverse employment action? **Yes.**

12. Was Laid Lefkir's exercise of his statutory right or privilege a motivating reason for the adverse employment action?  **Yes.**

13. Was the adverse employment action a substantial factor in causing harm to Laid Lefkir?  **Yes.**

## NEGLIGENCE

14. Did Rancho Los Amigos/County of Los Angeles act negligently by failing to take immediate and appropriate corrective action after its supervisors knew or should

Exhibit H, Page 49

have known of conduct that caused a hostile or abusive work environment based on Laid Lefkir's gender, perceived sexual orientation, national origin or religion?  **Yes.**

15. Did Laid Lefkir suffer harm from a hostile or abusive work environment based on his gender, perceived sexual orientation, national origin or religion?  **Yes.**

16. Was the negligence a substantial factor in causing Laid Lefkir's harm?  **Yes.**

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

17. Did Rancho Los Amigos/County of Los Angeles engage in outrageous conduct?  **Yes.**

18. Did Rancho Los Amigos/County of Los Angeles intend to cause Laid Lefkir emotional distress, or act with reckless disregard of the probability that Laid Lefkir would suffer emotional distress, knowing that Laid Lefkir was present when the conduct occurred?  **Yes.**

19. Did Laid Lefkir suffer severe emotional distress as a result of a hostile or abusive work environment based on his gender, perceived sexual orientation, national origin or religion?  **Yes.**

20. Was the conduct of Rancho Los Amigos/County of Los Angeles a substantial factor in causing Laid Lefkir's severe emotional distress?  **Yes.**

### DAMAGES

22. What are Laid Lefkir's damages?

Past Economic Loss

Lost Earnings              $99,533.00

Medical Expenses           $113,430.00

-4-

-----------------------------

Judgment Following Jury Verdict

Exhibit H, Page 50

Future Economic Loss

Lost Earnings                        $169,720.00

Medical Expenses                     $122,720.00

Past Non-economic Loss - including emotional injury, humiliation, embarrassment, mental pain and suffering $400,000.00

Future Non-economic Loss- including emotional injury, humiliation, embarrassment, mental pain and suffering $100,000.00

**Total Verdict for Plaintiff: $1,005,403.**

Judgment is hereby entered in favor or Plaintiff, Laid Lefkir, and against Defendant, Rancho Los Amigos National Rehabilitation Center/County of Los Angeles, in the verdict amount of $1,005,403.

Attorneys' fees and costs to be determined separately:

Attorneys' fees for Plaintiff      *$171,917.50* *

Costs for Plaintiff                _____

DATED: 7/8/10

It is so ordered.

*Elizabeth Allen White*
The Honorable Elizabeth Allen White
Judge of the Superior Court, Dept. 48

*\* PER COURT ORDER OF 9/22/10*

-5-
------------------------
Judgment Following Jury Verdict

Exhibit H, Page 51

Respectfully submitted,

DATED: June ___, 2010                    TEREN LAW GROUP, p.c.

BY: _____
Pamela M. Teren
Attorney for Plaintiff, Laid Lefkir



Judgment Following Jury Verdict

Exhibit H, Page 52

# EXHIBIT I

Anthony Lanza, Bar No. 156703
Brodie Smith, Bar No. 221877
LANZA & GOOLSBY
A Professional Law Corporation
3 Park Plaza, Suite 1650
Irvine, California 92614-8540
Telephone (949) 221-0490
Facsimile (949) 221-0027

Attorneys for Plaintiff Doug Martin

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION – SANTA ANA

DOUG MARTIN, an individual;

   Plaintiff,

vs.

ARROW ELECTRONICS, INC.,
a corporation;

   Defendant.

Case No.  SACV04-1134 JVS

**SECOND AMENDED JUDGMENT
IN FAVOR OF PLAINTIFF**

Hon.  James V. Selna

Trial: May 30, 2006

   From May 30, 2006, through June 9, 2006, the Honorable James V. Selna presided over the jury trial of the counts asserted in this action by plaintiff Doug Martin against defendant Arrow Electronics, Inc., resulting in a special verdict, signed on June 12, 2006, in favor of Doug Martin.   The special verdict retuned by the jury awarded monetary damages in favor of Doug Martin against Arrow Electronics in the total sum of $1,519,579.

1

Judgment was initially entered on June 29, 2006, in the sum of $1,519,579. The Court then granted in part and denied in part Arrow's motion for judgment as a matter of law under FRCP 50(b), or in the alternative, for a new trial under FRCP 59, resulting in an amended judgment, dated September 14, 2006, in the sum of $973,385, based on the following breakdown of damages:

a.   Past economic loss:

    Lost earnings:              $607,385

    Medical expenses:      $41,000

b.   Future economic loss:

    Lost earnings:              none (stricken by the Court)

    Medical expenses:      $24,000

c.   Past non-economic loss:   (such as physical pain): $300,000

d.   Future non-economic loss:   (such as physical pain): $0

e.   Punitive damages:        $1,000

Plaintiff's initial motion for attorney fees was thereafter argued and granted, in the sum of $473,554 for attorney fees and $22,452 for costs, which elevated the total judgment to $1,469,391.

Arrow filed an appeal on October 5, 2006, which was denied on May 29, 2009, pursuant to appellate memorandum of decision, which confirmed the judgment in its entirety.

After the appellate decision became final, in 2009, Martin filed a motion to enforce bond and a motion for supplemental award of attorney fees. Both motions were granted on November 10, 2009. The Court added supplemental attorney fees in the sum of $5,282, plus supplemental costs in the sum of $1,973.12, plus interest, at the annual rate of 5.04%, thereby elevating the total judgment to $1,732,482.40, effective through November 10, 2009.

O:\ECF Ready\Martin v. Arrow - Judgment Against Arrow.2d Amended.doc

Exhibit I, Page 55

1    Interest continued to accrue on the judgment from November 11 through

2   December 14, 2009, at the rate of 5.04% per annum, for a total of $7,894.26, thereby

3   elevating the total judgment to $1,740,376.66, effective through December 14, 2009.

4    Judgment is hereby accordingly entered in favor of plaintiff Doug Martin against

5   defendant Arrow Electronics, Inc. in the total sum of $1,740,376.66.     The bonding

6   surety, First Deposit & Fidelity Co. of Maryland, is obligated, jointly and severally with

7   Arrow, to pay this judgment pursuant to Court Order dated November 10, 2009.

8    This judgment shall continue to accrue interest pursuant to 28 USC Section

9   1961(a) at 5.04% per annum, in the sum of $239.22 per day, accruing from December

10  15, 2009, until paid in full.

11

12

13  Dated:  December 15, 2009    _____

14                                      Judge James V. Selna

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Anthony Lanza, Bar No. 156703
Brodie Smith, Bar No. 221877
LANZA & GOOLSBY
A Professional Law Corporation
3 Park Plaza, Suite 1650
Irvine, California 92614-8540
Telephone (949) 221-0490
Facsimile (949) 221-0027

Attorneys for Plaintiff Doug Martin

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| DOUG MARTIN, an individual;<br><br>    Plaintiff,<br><br>vs.<br><br>ARROW ELECTRONICS, INC.,<br>a corporation;<br><br>    Defendant. | Case No.  SACV04-1134 JVS<br><br>**THIRD AMENDED JUDGMENT IN<br>FAVOR OF PLAINTIFF**<br><br>Hon.   James V. Selna<br><br>Trial: May 30, 2006 |

From May 30, 2006, through June 9, 2006, the Honorable James V. Selna presided over the jury trial of the counts asserted in this action by plaintiff Doug Martin against defendant Arrow Electronics, Inc. ("Arrow"), resulting in a special verdict, signed on June 12, 2006, in favor of Doug Martin.   The special verdict retuned by the jury awarded monetary damages in favor of Doug Martin against Arrow in the total sum of $1,519,579.

Judgment was initially entered on June 29, 2006, in the sum of $1,519,579. The Court then granted in part and denied in part Arrow's motion for judgment as a matter of law under FRCP 50(b), or in the alternative, for a new trial under FRCP 59, resulting in an **amended judgment**, dated September 14, 2006, in the sum of $973,385.

1    Plaintiff's initial motion for attorney fees was thereafter argued and granted, in the

2   sum of $473,554 for attorney fees and $22,452 for costs, which elevated the total

3   judgment to $1,469,391.

4    Arrow filed an appeal on October 5, 2006, which was denied on May 29, 2009,

5   pursuant to appellate memorandum of decision, which confirmed the judgment in its

6   entirety.

7    After the appellate decision became final, in 2009, Martin filed a motion to

8   enforce bond and a motion for supplemental award of attorney fees. Both motions were

9   granted on November 10, 2009. The Court added supplemental attorney fees in the sum

10   of $5,282, plus supplemental costs in the sum of $1,973.12, plus interest, at the annual

11   rate of 5.04%.

12    On December 15, 2009, the **second amended judgment** was entered in favor of

13   Doug Martin against Arrow in the total sum of $1,740,376.66, which included interest at

14   the rate of 5.04% per annum under 28 U.S.C. Section 1961(a). Arrow paid that sum,

15   less certain deductions for federal tax withholding, on January 21, 2010, in the sum of

16   $1,617,404.87.

17    On March 3, 2010, the Court granted plaintiff's motion for supplemental award of

18   attorney fees – No. 2 (filed on January 19, 2010), ordering Arrow to pay $15,484 in

19   supplemental attorney fees. As such, judgment is amended and entered against Arrow in

20   the sum of $15,484, plus interest in the sum of $2.17 per day (5.04% per annum)

21   accruing until paid in full, payable directly to legal counsel for plaintiff, Lanza &

22   Goolsby. Any additional attorney fees and costs incurred in attempting to collect on this

23   judgment shall also be paid by Arrow.

24

25

26   Dated: May 25, 2010

27                                 Honorable James V. Selna

28

THIRD AMENDED JUDGMENT

2

Q:\ECF Ready\Martin v. Arrow - Judgment v. Arrow.3d Amended.doc

# EXHIBIT J





FILED
CLERK US DISTRICT COURT

SEP 2 7 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

EDWARD Y. S. LEE, an individual    )    CASE NO.  02-05172 FMC (Rzx)
                                   )
                Plaintiff,         )    ASSIGNED FOR ALL PURPOSES TO:
                                   )    JUDGE FLORENCE-MARIE COOPER
            v.                     )    COURTROOM 750-ROYBAL
                                   )
TRW INC.[now known as NORTHROP     )    ███████████ **JUDGMENT ON SPECIAL**
GRUMMAN SPACE & MISSION SYSTEMS    )    **VERDICT**
CORPORATION], a corporation, and   )
DOES 1 through 20, inclusive,      )
                                   )
                Defendants.        )

        The claim for age discrimination in violation of the *California*
*Fair Employment and Housing Act* [California Government Code § 12941]
of plaintiff EDWARD Y. S. LEE [LEE] against defendant TRW, INC., now
known as NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION,
[Defendant], having come on regularly for trial by jury; and the jury
having rendered a special verdict in favor of LEE and against
Defendant, filed with the Clerk on September 13, 2006, to wit:

    "Title of Court and Cause"

    VERDICT FORM

        We the jury in the above entitled action, find the

    following on the questions submitted to us:



ENTERED
CLERK, U.S. DISTRICT COURT

SEP 29 2006

BY                          021

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

171

Exhibit J, Page 60

1. Was plaintiff's age a motivating factor in the defendant's decision to terminate him?

      **Answer: Yes** _x___          **No** _____

*If you answered "no" to Question 1, date and sign this verdict form. If you answered "yes", go to Question 2.*

2. Was plaintiff harmed?

      **Answer: Yes** _x___          **No** _____

*If you answered "no" to Question 2, date and sign this verdict form. If you answered "yes", go to Question 3.*

3. Was the termination a substantial factor in causing plaintiff's harm?

      **Answer: Yes** _x___          **No** _____

*If you answered "no" to Question 3, date and sign this verdict form. If you answered "yes", go to Question 4.*

4.(A) What is the amount of past economic damage suffered by plaintiff?

      **Answer: $773,273**

4.(B) What is the amount of future economic damage suffered by plaintiff?

      **Answer: $29,800**

4.(C) What is the amount of emotional distress suffered by plaintiff?

      **Answer: $50,000**

5. Do you find by clear and convincing evidence that defendant's conduct was malicious, oppressive, or fraudulent?

      **Answer: Yes** _x___          **No** _____

*If you answered "no" to Question 5, date and sign this verdict form. If you answered "yes", go to Question 6.*

2

6.    What is the amount of punitive damages imposed against defendant?

**Answer: $1,200,000**

Dated: September 13, 2006

[s] Gail L. Curtis

Jury Foreperson

It is therefore,

ORDERED that judgment be and is hereby awarded in favor of Plaintiff EDWARD W.S. LEE and against defendant (1) in the sum of $773,273 for past economic damage with interest thereon at the rate of seven per cent [7%] *per annum* from December 17, 1999 until the date this judgment is entered and thereafter at ten per cent [10%] *per annum* until paid, (2) in the sum of $29,800 for future economic damage with interest thereon at the rate of ten per cent [10%] *per annum* from the date this judgment is entered until paid, (3) in the sum of $50,000 for emotional distress with interest thereon at the rate of ten per cent [10%] *per annum* from the date this judgment is entered until paid, (4) in the sum of $1,200,000 in punitive damages with interest thereon at the rate of ten per cent [10%] *per annum* from the date this judgment is entered until paid, (5) costs in the sum of $ _____, and (6) attorney's fees in the sum of $ _____.

Dated: Sept 27, 2006

Submitted by:

JULIAN B. BELLENGHI, ESQ.
Attorneys for Plaintiff,

United States District Judge

1  Re:  **LEE v. TRW INC.**
       Appeal Case No.: 03-56332
2      U.S.D.C. Case No.: 02-05172 FMC (Rzx)
       File No.: LEE-1
3
                        **PROOF OF SERVICE**
4

5  STATE OF CALIFORNIA        )
                              )  ss.
6  COUNTY OF ORANGE           )

7       I am employed in the County of Orange, State of California.  I am over the age of 18 and
   not a party to the within action; my business address is 1201 Dove Street, Suite 570, Newport
8  Beach, CA 92660.

9       On September 19, 2006, I served the document(s) described as: **[Proposed]
   JUDGMENT ON SPECIAL VERDICT**, by placing a copy thereof enclosed in a sealed envelope
10 and addressing it as follows:

11 Gregg Sindici, Esq.                        Attorney for Defendant
   LITTLER MENDELSON
12 501 West Broadway, Suite 900
   San Diego, CA 92101
13 Tel.: (619) 232-0441
   Fax: (619) 232-4302
14

15      I am "readily familiar" with the firm's practice of collection and processing
   correspondence for mailing.  Under that practice it would be deposited with the U.S. postal
16 service on that same day with postage thereon fully prepaid at Newport Beach, California in the
   ordinary course of business.  I am aware that on motion of the party served, service is presumed
17 invalid if postal cancellation date or postage meter date is more than one day after date of deposit
   for mailing in affidavit.
18
   __X__    (By Mail) I deposited such envelope in the mail at Newport Beach, California.
19          The envelope was mailed with postage thereon fully prepaid.  Executed on
            September 19, 2006, at Newport Beach, California.
20
   __—__    (By Overnight Mail) Such envelope given to an agent of OVERNITE EXPRESS
21          to be delivered by hand to the address listed below.  Executed on September 19,
            2006 at Newport Beach, California.
22
   __—__    (By Facsimile) Such document was faxed at the facsimile number stated above.
23          Executed on September 19, 2006, at Newport Beach, California.

24 __X__    (Federal) I declare that I am employed in the office of a member of the bar of this
            court at whose direction the service was made.  Executed on September 19, 2006.
25

26                      By: _____
                              Edina Bullard
27

28

# EXHIBIT K

FILED
CLERK, U S DISTRICT COURT

OCT 1 9 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

07 OCT 16  PM 2: 57

LODGED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARTHUR KRUISHEER,<br><br>Plaintiff,<br><br>vs.<br><br>TOYS 'R' US - DELAWARE, INC.<br>and DOES 1 through 100,<br>inclusive,<br><br>Defendants. | CASE NO. CV 05-3425-GAF(VBKx)<br><br>[Assigned to the Hon. Gary Allen Feess, Judge, Courtroom "740"]<br><br>[~~PROPOSED~~] JUDGMENT ON SPECIAL VERDICT<br><br>Trial Date:      October 9, 2007<br>Time:            8:30 a.m.<br>Courtroom:       740<br><br>Action Filed:    March 21, 2005<br>Pre-Trial Conf:  September 17, 2007<br>Trial:           October 9, 2007 |



DOCKETED ON CM

OCT 2 2 2007

BY _____ 005

This action came on regularly for trial on October 9, 2007, in Courtroom 740 of the United States District Court, Central District of California, the Honorable Gary Allen Feess, Judge presiding.  Plaintiff Arthur Kruisheer was personally present and appeared through his attorneys, Christopher Brizzolara, Esq. and Gregory W  Smith, Esq.  Defendant Toys "R" Us - Delaware, Inc.

1

*161*

**[~~PROPOSED~~] JUDGMENT ON SPECIAL VERDICT**

1  appeared through its attorneys, Henry Sanchez, Esq. of Jackson Lewis, LLP.

2      A jury of eight persons was regularly impaneled and sworn. Witnesses

3  were sworn and testified, and exhibits were identified and received into evidence.

4      After hearing the evidence and arguments of counsel, the jury was duly

5  instructed by the court and the case was submitted to the jury with directions to

6  return verdict on the special verdict which had been agreed to by counsel and

7  which was submitted to the jury. The jury deliberated and thereafter returned

8  into court on October 12, 2007 with its verdict consisting of the special questions

9  submitted to the jury and the answers given thereto by the jury, which said

10  verdict was in words and figures as follows, to wit:

11      "We, the jury in the above-entitled action, find the following special verdict

12  on the questions submitted to us:

13      1.    Was Plaintiff Arthur Kruisheer's age a motivating reason in his

14  termination by Defendant Toys "R" Us?

15      Answer Yes or No.

16      Yes:  _X_    No:  ____

17      2.    Was Plaintiff Arthur Kruisheer's medical condition a motivating

18  reason in his termination by Defendant Toys "R" Us?

19      Answer Yes or No.

20      Yes:  _X_    No:  ____

21      If you answered "Yes" to either Question 1 or 2, go to Question 3. If you

22  answered "No" to both questions, sign and return this verdict form to the Court.

23      3.    Did Plaintiff Arthur Kruisheer suffer damages as a result of being

24  terminated?

25      Answer Yes or No.

26      Yes:  _X_    No:  ____

27      If you answered "Yes" to Question 3, go to Question 4. If you answered

28  "No" to Question 3, sign and return this verdict form to the Court.

2

**[PROPOSED] JUDGMENT ON SPECIAL VERDICT**

4.    The jury finds that Plaintiff Arthur Kruisheer suffered damages in the following amounts:

| | |
|---|---|
| Past economic | $ 40,000 |
| Future economic | $ 90,000 |
| Past non-economic | $ 750,000 |
| Future non-economic | $ 250,000 |
| Total | $ 1,130,000 |

DATED: October 12, 2007

Jorge Carreon

Foreperson of the Jury"

It appearing by reason of said special verdict that plaintiff Arthur Kruisheer is entitled to judgment against defendant Toys "R" Us - Delaware, Inc.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED** that plaintiff Arthur Kruisheer have judgment in his favor and recover from defendant Toys "R" Us - Delaware, Inc. in the amount of $1,130,000.00, with interest *established under 28 U.S.C. § 1961* thereon at the rate of ten (10%) percent per annum from the date of entry of verdict until paid, together with costs and attorneys fees according to proof in the amount of $_____.

DATED: October 1 8, 2007

The Honorable Gary Allen Feess
United States District Court Judge

3

**[PROPOSED] JUDGMENT ON SPECIAL VERDICT**

Exhibit K, Page 67

PROOF OF SERVICE

1

2   STATE OF CALIFORNIA          )

3   COUNTY OF LOS ANGELES        )

4        I am employed in the County of Los Angeles, State of California. I am over the age of 18 years of age, and am not a party to the within action.   One of my

5   business addressed is 1528 16th Street, Santa Monica, California 90404.

6        On the date hereinbelow specified, I served the foregoing document, described as set forth below on the interested parties in this action by placing

7   true copies thereof enclosed in sealed envelopes, at Santa Monica, California, addressed as follows:

8   DATE OF SERVICE          :        10\16     , 2007

9   DOCUMENT SERVED          :     **[PROPOSED] JUDGMENT ON SPECIAL**

10  **VERDICT**

11  PARTIES SERVED           :

12  Henry Sanchez, Esq.                    Gregory W. Smith, Esq.
    Jackson Lewis, LLP                     9952 Santa Monica
13  725 South Figueroa Street, Suite       Boulevard, 1st Floor
    2500                                   Beverly Hills, California
14  Los Angeles, California 90017          90212

15

16  <u>XXX</u>  (BY REGULAR MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Santa Monica, California.

17  I am "readily familiar" with firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that

18  same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or

19  postage meter date is more than one day after date of deposit for mailing in affidavit.

20
    <u>XXX</u>  (STATE) I declare under penalty of perjury under the laws of the State
21  of California that the above is true and correct.

22  <u>XXX</u>  (FEDERAL) I am of a member of the bar of this court.

23

24      EXECUTED on    10\16  , 2007.

25                                        _____
                                          Christopher Brizzolara
26

27

28

4

**[PROPOSED] JUDGMENT ON SPECIAL VERDICT**

# EXHIBIT L



FILED
CLERK US DISTRICT COURT

DEC 15 2010

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANEEN A. PEACOCK, | Case No. CV09-09206 JHN (Rzx) [Assigned to Honorable Jacqueline H. Nguyen, Courtroom 790 |
| Plaintiff, | |
| v. | **SPECIAL JURY VERDICT FORM** |
| QUEST DIAGNOSTICS, and DOES 1 to 100, Inclusive, | |
| Defendants. | **\*\*REDACTED VERDICT FORM AS TO FOREPERSON SIGNATURE \*\*** |

We, the jury in the above-entitled action, find the following special verdict on the questions submitted to us:

///
///
///
///
///
///
///
///

**SPECIAL VERDICT FORM**

Exhibit L, Page 70

**VF-1: VIOLATION OF CALIFORNIA FAMILY RIGHTS ACT:**

1.    Did Janeen Peacock request leave for her own serious health condition that made her unable to perform the functions of her job with Quest Diagnostics Clinical Laboratories, Inc.?

    Answer:   ✓ Yes         _____ No

If your answer to Question No. 1 is "Yes," go to Question No. 2. If your answer to Question No. 2 is "No," stop here, and skip to Question No. 9.

2.    Did Janeen Peacock provide reasonable notice to Quest Diagnostics Clinical Laboratories, Inc. of her need for medical leave?

    Answer:   ✓ Yes         _____ No

If your answer to Question No. 2 is "Yes," go to Question No. 3. If your answer to Question No. 3 is "No," stop here, and skip to Question No. 9.

3    Did Quest Diagnostics Clinical Laboratories, Inc. refuse to grant Janeen Peacock's request for medical leave?

    Answer:   ✓ Yes         _____ No

If your answer to Question No. 3 is "Yes," go to Question No. 4. If your answer to Question No. 4 is "No," stop here, and skip to Question No. 9.

**SPECIAL VERDICT FORM**

2

4.    Was Quest Diagnostics Clinical Laboratories, Inc.'s refusal to grant leave to Janeen Peacock a substantial factor in causing harm to Janeen Peacock?

Answer:    ✓ Yes                    _____ No

Regardless of how you answered Question No. 4, go to Question No. 5.

**SPECIAL VERDICT FORM**

3

1    **VF-2: INTERFERENCE WITH RIGHTS UNDER CALIFORNIA FAMILY**

2    **RIGHTS ACT:**

3    5.    Did Janeen Peacock request leave for her own serious health condition that

4    made her unable to perform the functions of her job with Quest Diagnostics

5    Clinical Laboratories, Inc.?

6

7    Answer:    ✓ Yes    _____ No

8

9    If your answer to Question No. 5 is "Yes," go to Question No. 6. If your

10   answer to Question No. 5 is "No," stop here, and skip to Question No. 9.

11

12   6.    Did Janeen Peacock provide reasonable notice to Quest Diagnostics Clinical

13   Laboratories, Inc. of her need for medical leave?

14

15   Answer:    ✓ Yes    _____ No

16

17   If your answer to Question No. 6 is "Yes," go to Question No. 7. If your

18   answer to Question No. 6 is "No," stop here, and skip to Question No. 9.

19

20   7.    Did Quest Diagnostics Clinical Laboratories, Inc. interfere with, restrain or

21   deny Janeen Peacock's exercise of or attempt to exercise medical leave

22   rights?

23

24   Answer:    ✓ Yes    _____ No

25

26   If your answer to Question No. 7 is "Yes," go to Question No. 8. If your

27   answer to Question No. 7 is "No," stop here, and skip to Question No. 9.

28

**SPECIAL VERDICT FORM**

4

Exhibit L, Page 73

8.     Was Quest Diagnostics Clinical Laboratories, Inc.'s conduct a substantial factor in causing harm to Janeen Peacock?

Answer:     ✓ Yes        _____ No

Regardless of how you answered Question No. 8, go to Question No. 9.

**SPECIAL VERDICT FORM**

5

**VF-3: DISABILITY DISCRIMINATION - FAILURE TO REASONABLY ACCOMMODATE:**

9.    Did Janeen Peacock have a mental condition that limited a major life activity?

Answer:    ✓ Yes    _____ No

If your answer to Question No. 9 is "Yes," go to Question No. 10.  If your answer to Question No. 9 is "No," then skip to Question 20 if you answered "Yes" to either Question No. 4, Question No. 8 or both.  Otherwise, stop here, answer no further questions, and have the Presiding Juror sign and date this form.

10.    Did Quest Diagnostics Clinical Laboratories, Inc. know of Janeen Peacock's mental condition that limited a major life activity?

Answer:    ✓ Yes    _____ No

If your answer to Question No. 10 is "Yes," go to Question No. 11.  If your answer to Question No. 10 is "No," then skip to Question 20 if you answered "Yes" to either Question No. 4, Question No. 8 or both.  Otherwise, stop here, answer no further questions, and have the Presiding Juror sign and date this form.

**SPECIAL VERDICT FORM**

6

Exhibit L, Page 75

11. Was Janeen Peacock able to perform the essential job duties with reasonable accommodation for her mental condition?

Answer: ___✓___ Yes        _____ No

If your answer to Question No. 11 is "Yes," go to Question No. 12. If your answer to Question No. 11 is "No," then skip to Question 20 if you answered "Yes" to either Question No. 4, Question No. 8 or both. Otherwise, stop here, answer no further questions, and have the Presiding Juror sign and date this form.

12. Did Quest Diagnostics Clinical Laboratories, Inc. fail to provide reasonable accommodation for Janeen Peacock's mental condition?

Answer: ___✓___ Yes        _____ No

If your answer to Question No. 12 is "Yes," go to Question No. 13. If your answer to Question No. 12 is "No," then skip to Question 20 if you answered "Yes" to either Question No. 4, Question No. 8 or both. Otherwise, stop here, answer no further questions, and have the Presiding Juror sign and date this form.

13. Was Quest Diagnostics Clinical Laboratories, Inc.'s failure to make a reasonable accommodation a substantial factor in causing harm to Janeen Peacock?

Answer: ___✓___ Yes        _____ No

Regardless of how you answered Question No. 13, go to Question No. 14.

**SPECIAL VERDICT FORM**

7

**VF-4: DISABILITY DISCRIMINATION -- FAILURE TO ENGAGE IN**
**GOOD-FAITH INTERACTIVE PROCESS**

14.    Did Janeen Peacock have a mental condition that limited a major life
activity?

Answer:    ✓ Yes          _____ No

If your answer to Question No. 14 is "Yes," go to Question No. 15.  If your
answer to Question No. 14 is "No," then skip to Question 20 if you
answered "Yes" to any of the following: Question No. 4, Question No. 8, or
Question No. 13.  Otherwise, stop here, answer no further questions, and
have the Presiding Juror sign and date this form.

15.    Did Janeen Peacock request that Quest Diagnostics Clinical Laboratories,
Inc. make reasonable accommodation for her disability so that she would be
able to perform the essential job requirements?

Answer:    ✓ Yes          _____ No

If your answer to Question No. 15 is "Yes," go to Question No. 16.  If your
answer to Question No. 15 is "No," then skip to Question 20 if you
answered "Yes" to any of the following: Question No. 4, Question No. 8, or
Question No. 13.  Otherwise, stop here, answer no further questions, and
have the Presiding Juror sign and date this form.

**SPECIAL VERDICT FORM**

8

Exhibit L, Page 77

16. Was Janeen Peacock willing to participate in an interactive process to determine whether reasonable accommodations could be made so that she would be able to perform the essential job requirements?

Answer: ✓ Yes _____ No

If your answer to Question No. 16 is "Yes," go to Question No. 17. If your answer to Question No. 17 is "No," then skip to Question 20 if you answered "Yes" to any of the following: Question No. 4, Question No. 8, or Question No. 13. Otherwise, stop here, answer no further questions, and have the Presiding Juror sign and date this form.

17. Did Quest fail to participate in a timely, good-faith interactive process with Janeen Peacock to determine whether reasonable accommodation could be made?

Answer: ✓ Yes _____ No

If your answer to Question No. 17 is "Yes," go to Question No. 18. If your answer to Question No. 17 is "No," then skip to Question 20 if you answered "Yes" to any of the following: Question No. 4, Question No. 8, or Question No. 13. Otherwise, stop here, answer no further questions, and have the Presiding Juror sign and date this form.

**SPECIAL VERDICT FORM**

9

18. Was Janeen Peacock able to perform the essential job duties with reasonable accommodation for her condition?

Answer:    ✓ Yes              _____ No

If your answer to Question No. 18 is "Yes," go to Question No. 20. If your answer to Question No. 18 is "No," then skip to Question 20 if you answered "Yes" to any of the following: Question No. 4, Question No. 8, or Question No. 13. Otherwise, stop here, answer no further questions, and have the Presiding Juror sign and date this form.

19. Was Quest's failure to engage in a good-faith interactive process a substantial factor in causing harm to Janeen Peacock?

Answer:    ✓ Yes              _____ No

If your answer to Question No. 19 is "Yes," go to Question No. 20. If your answer to Question No. 19 is "No," then go to Question 20 if you answered "Yes" to any of the following: Question No. 4, Question No. 8, or Question No. 13. Otherwise, stop here, answer no further questions, and have the Presiding Juror sign and date this form.

**SPECIAL VERDICT FORM**

10

**VF-5: DAMAGES**

20.   What are Janeen Peacock's damages?

a.   Past economic harm or loss:              $ 71,138

b.   Future Economic harm or loss:            $ 8,500

c.   Past noneconomic harm or loss:           $ 150,000

d.   Future noneconomic harm or loss:         $ — 0 —

TOTAL:                                        $ 229,638

The above is the verdict of the jury in this case.

Dated: 12/15/10                    REDACTED
                                   _____
                                   Presiding Juror

When signed and dated, this verdict form should be delivered to the bailiff.

**SPECIAL VERDICT FORM**

11

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANEEN A. PEACOCK, | Case No. 2:09-cv-09206-JHN -RZx |
| Plaintiff, | [Assigned to Honorable Jacqueline H. Nguyen, Courtroom 790] |
| v. | **JUDGMENT ON SPECIAL JURY VERDICT** |
| QUEST DIAGNOSTICS, and DOES 1 to 100, Inclusive, | |
| Defendants. | |

This action came on regularly for jury trial on December 7, 2010, before the Honorable Jacqueline H. Nguyen, United State District Judge, presiding.

Based on the jury's verdict in favor of Plaintiff Janeen Peacock, returned on December 15, 2010, IT IS ORDERED AND ADJUDGED that judgment shall be entered in favor of Plaintiff and against Defendant Quest Diagnostics Clinical Laboratories, Inc.

Plaintiff shall recover from Defendant Quest Diagnostics Clinical Laboratories, Inc. the sum of two hundred twenty-nine thousand, six hundred thirty-eight dollars and zero cents ($229,638.00) with interest thereon at the legal rate until

- 1 -
**[PROPOSED] JUDGMENT**

Exhibit L, Page 81

1  paid.  Plaintiff shall be entitled to file a timely Memorandum of Costs and Motion

2  for Attorneys' Fees.  Should the Court grant any such costs or fees, the Judgment

3  shall be amended accordingly.

4

5      IT IS SO ORDERED.

6

7

8  DATED: May 13, 2011

   Hon. Jacqueline H. Nguyen
9  United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -
**[PROPOSED] JUDGMENT**

David M. deRubertis, State Bar No. 208709
Kimberly Y. Higgins, State Bar No. 245174
**The deRubertis Law Firm**
4219 Coldwater Canyon Avenue
Studio City, California 91604
Telephone: 818.761.2322
Facsimile: 818.761.2323
Email: David@deRubertisLaw.com
Email: Kim@deRubertisLaw.com

Joseph Lavi, State Bar No. 209776
LAVI & EBRAHIMIAN, LLP
8383 Wilshire Boulevard, Suite 840
Los Angeles, CA 90211
Telephone: 323.653.0086
Facsimile: 323.653.0081
Email: Jlavi@LELawFirm.com

Attorneys for Plaintiff
JANEEN A. PEACOCK

David Jacobs, State Bar No. 73545
Deanna L. Ballesteros, State Bar No. 159079
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, California 90067-2506
Telephone: 310.556.8861
Facsimile: 310.553.2165
djacobs@ebglaw.com
dballesteros@ebglaw.com

Attorneys for Defendant
QUEST DIAGNOSTICS CLINICAL
LABORATORIES, INC., erroneously sued as
"Quest Diagnostics"

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANEEN A. PEACOCK, | CASE NO. CV09-09206 JHN (RZx) |
| Plaintiff, | Complaint Filed: October 29, 2009 |
| v. | **ORDER RESOLVING MOTION FOR STATUTORY ATTORNEY'S FEES AND TAKING MOTION OFF-CALENDAR** |
| QUEST DIAGNOSTICS, and DOES 1 to 100, Inclusive, | |
| Defendants. | |

[PROPOSED] ORDER RESOLVING MTN. FOR ATTORNEY'S FEES AND TAKING MTN. OFF-CALENDAR

## ORDER

The Court having reviewed the Joint Stipulation Resolving Motion for Statutory Attorney's Fees and Taking Motion Off-Calendar, hereby finds good cause for that stipulation, and orders as follows:

1. Defendant shall pay the sum of five hundred and ninety-nine thousand dollars ($599,000.00) to resolve Plaintiff's counsels' claim for statutory attorney's fees; and

2. Plaintiff's motion for statutory attorney's fees is therefore moot and taken off-calendar.

**IT IS SO ORDERED.**

DATED: SEP 1 9 2011          By: _____

HON. JACQUELINE H. NGUYEN
United States District Judge

- 2 -

[PROPOSED] ORDER RESOLVING MTN. FOR ATTORNEY'S FEES AND TAKING MTN. OFF-CALENDAR

Exhibit L, Page 84

Case 8:20-cv-00426-DOC-DFM    Document 4    Filed 03/02/20    Page 87 of 112    Page ID #:196

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)

27 Trials Digest 14th 10, 2010 WL 6806990 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2012 Thomson Reuters/West
United States District Court, C.D. California, Western Division.

Peacock vs. Quest Diagnostics

**TOPIC:**

Synopsis: **Employee** alleges discriminatory termination in violation of CFRA

Case Type: Labor & **Employment**; Discrimination; Labor & **Employment**; Termination/Constructive Discharge; Labor & **Employment**; Violation of Public Policy; Labor & **Employment**; Family & Medical Leave; Labor & **Employment**; Disability/ Medical Condition; Labor & **Employment**; Retaliation

DOCKET NUMBER: 09CV09206(JHN)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 15, 2010

JUDGE: Jacqueline H. Nguyen
**ATTORNEYS:**
Plaintiff: Christopher B. Adamson, Lavi & Ebrahimian, Los Angeles; Joseph Lavi, Lavi & Ebrahimian, Los Angeles.
Defendant: Deanna L. Ballesteros, Epstein, Becker & Green, Los Angeles; David Jacobs, Epstein, Becker & Green, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $229,638

Range: $200,000-499,999
$71,138 past economic; $8,500 future economic; $150,000 past non-economic.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

Exhibit L, Page 86

## FACTS/CONTENTIONS

According to court records: Plaintiff Janeen A. Peacock was an employee of defendant Quest Diagnostics, working as a Specimen Tech II from February 2003 until approximately January 16, 2008, when she was wrongfully terminated. In the later part of 2007, plaintiff's Manager and/or Supervisor, Raymond Candeleria, started causing plaintiff severe emotional distress and depression, which manifested itself in panic attacks which were witnessed by Candeleria. Plaintiff informed Candeleria that she had been under a lot of stress at work and that was the reason for her panic attacks, which, over the months, started to increase in frequency and/or duration.

In early January 2008, plaintiff had an outburst at work in front of Candeleria. Plaintiff started crying uncontrollably in front of Candeleria and told him that her outburst was due to severe distress at work.

On January 16, 2008, plaintiff checked herself into Northridge Hospital's Emergency Room due to severe depression. On January 17, 2008, plaintiff informed defendant's Human Resources that she had been admitted into hospital for severe depression and that she had been taken off work. Plaintiff was released on January 21, 2008 and was placed on disability by her treating physician until February 5, 2008. Upon release from the hospital, plaintiff informed defendant of her disability and mailed a copy of her doctor's note placing her off work and on disability.

On January 22, 2008, plaintiff contacted defendant's Benefit Department and informed them that she had to receive psychological treatment and group therapy from January 22, 2008 to February 1, 2008. She was informed that that was okay and that defendant would follow up with plaintiff in a few days.

On February 1, 2008, plaintiff was informed by her treating physician that her insurance had been canceled. Plaintiff contacted Human Resources to find out why and was told that they did not know why.

On February 1, 2008, plaintiff received a letter dated January 31, 2008, stating that defendant had terminated plaintiff's employment for job abandonment.

Plaintiff filed suit for Discriminatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2; Violation of the California Family Rights Act, California Government Code § 12945.2(a), Interfering with the Rights and Refusing an Employee's Request for a CFRA Medical Leave; Retaliatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2, for Requesting and Going on a Medical Leave; Tortious Termination and Discrimination in Violation of Public Policy; Disability Discrimination in Violation of FEHA; Discrimination Based on Perceived Disability in Violation of FEHA; Disability Discrimination in Violation of FEHA, Failure to Provide Reasonable Accommodation; Disability Discrimination in Violation of FEHA, Failure to Engage in Interactive Process; Retaliatory Termination in Violation of FEHA for Requesting a Reasonable Accommodation; Tortious Termination and Discrimination in Violation of Public Policy Based on FEHA; and Tortious Termination, Discrimination, and Failure to Hire in Violation of Public Policy for the Right to File a Workers' Compensation Claim due to Work Related Injury.


## CLAIMED INJURIES
NA


## CLAIMED DAMAGES
According to court records:
Not reported.


## SETTLEMENT DISCUSSIONS
According to court records:


Not reported.


## COMMENTS
According to court records:

Exhibit L, Page 87

Case 8:20-cv-00426-DOC-DFM    Document 4    Filed 03/02/20    Page 89 of 112    Page ID
#:198

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)

The complaint was filed on October 29, 2009.


Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

---

**End of Document**                              © 2013 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT M

21 Trials Digest 15th 13, 2012 WL 1707645 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2012 Thomson Reuters/West
Superior Court, Los Angeles County, California.

Vo vs. Valley Dodge Inc.

**TOPIC:**

Synopsis: Terminated employee alleges disability discrimination

Case Type: Labor & Employment; Disability/Medical Condition; Labor & Employment; Retaliation; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Violation of Public Policy

DOCKET NUMBER: BC388059

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: February 23, 2012

JUDGE: Arbitration Judge
**ATTORNEYS:**
Plaintiff: Laura L. Horton, Horton & DeBolt, Northridge.
Defendant: Keith Haskins, Marshall, French & DeGrave, Irvine.

**SUMMARY:**

Verdict/Judgment: Arbitration

Verdict/Judgment Amount: $739,887

Range: $500,000-999,999
The Arbitrator, the Hon. Judith C. Chirlin (Ret.) of Judicate West, awarded plaintiff $62,756 economic damages, $250,000 non-economic damages, $402,000 attorney fees, and $25,122 costs.

Trial Type: Arbitration

**EXPERTS:**

Plaintiff: Anthony E. Reading, Ph.D., psychologist, UCLA Medical School, Beverly Hills, (310) 276-3545.
Defendant: Richard G. Ness, M.D., psychiatrist, UCLA, Los Angeles, (310) 824-0075.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiff Jacques Vo was a car salesman at defendant Valley Dodge Inc. in Van Nuys, California. Plaintiff was considered legally blind but had 20/200 vision. Defendant reasonably accommodated plaintiff's disability by providing a porter to bring cars to potential buyers who wanted to test drive. In August 2006, plaintiff got an infection in his left eye and took a leave of absence. He provided defendant with a "Documentation of Medical Impairment ("DMI") from

Exhibit M, Page 90

Vo vs. Valley Dodge Inc., 21 Trials Digest 15th 13 (2012)

Kaiser. On June 29, 2007, plaintiff's ophthalmologist issued him a note releasing him to return to work. When he returned, he was told there was no job for him.

Plaintiff alleged that defendant discriminated against him because of his disability, that it failed to engage in the interactive process, that it failed to reasonably accommodate his disability, that it failed to rehire him, that it failed to prevent discrimination, and that it terminated him in violation of public policy.

**CLAIMED INJURIES**
According to court records:
Depression.

**CLAIMED DAMAGES**
According to court records:
Not reported.

**SETTLEMENT DISCUSSIONS**
According to court records:

Not reported.

**COMMENTS**
According to court records:

The complaint was filed on March 27, 2008.

Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

---

**End of Document**                                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit M, Page 91

# EXHIBIT N

JVR No. 809259, 2008 WL 3251449 (Unknown State Ct. (Cal.)) (Verdict and Settlement Summary)

Copyright (c) 2012 Thomson Reuters/West
Unknown California State Ct.

CORTES v. MONTEBELLO UNIFIED SCHOOL DISTRICT

BC359419
DATE OF TRIAL: May, 2008

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Non Verdict Award:**
**Total Verdict: $1,410,709**
**Judge Reduced Award To:**
**Claimed Past Medical:**
**Claimed Future Medical:**
**Claimed Past Wage Expense:**
**Claimed Future Wage Expense:**
Plaintiff's Economist:

Defendant's Economist:

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Charles Theodore Mathews, Pasadena, CA
Defendant: Ric C. Ottaiano, Orange, CA

JUDGE: Judith C. Chirlin

RANGE AMOUNT: $1,000,000-1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: An adult of undetermined age.

**PRIMARY STATUTE OR GROUND: Disability Discrimination-State**
**SECONDARY STATUTE OR GROUND:**
**GENERAL ENTITY TYPE: Education**
**SPECIFIC ENTITY TYPE: Education--General**
**ADVERSE EMPLOYMENT ACTION: Failure to accommodate, Failure to hire or rehire**

CORTES v. MONTEBELLO UNIFIED SCHOOL DISTRICT, ~~~~ ~o. 809259 (2008)

**AMOUNT OF AWARD AFTER STATUTORY LIMIT:**
**ATTORNEY'S FEES:**
**DAMAGES:**
Past Medical:

Future Medical:

Past Wage:

Future Wage:

Pain and Suffering: $82,000

Other: $1,328,709

Total: $1,410,709

Punitive:

Hedonic:

Other:

Interest:

Loss of Services:

**FACTS:**
A female elementary school teacher sued the defendant school district claiming **disability discrimination** in violation of state
law. The plaintiff alleged that the defendant failed to accommodate her work related injury and knee surgery and refused to
rehire her because of her disability. The plaintiff alleged that she was passed over for more than 20 other positions at the district.
The defendant denied the allegations and claimed that the plaintiff refused to consider returning to the classroom even with
accommodations.

Jury Verdict Research
COURT:

---

**End of Document**                                         © 2013 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT O

JVR No. 810265, 2008 WL 7602702 (Unknown State Ct. (Cal.)) (Verdict and Settlement Summary)

Copyright (c) 2012 Thomson Reuters/West
Unknown California State Ct.

ISMEN v. BEVERLY HOSPITAL

BC366198
DATE OF INCIDENT: September, 2006
DATE OF FILING: February, 2007
DATE OF TRIAL: August, 2008

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Non Verdict Award: $**
**Total Verdict: $1,180,164**
**Judge Reduced Award To: $**
**Claimed Past Medical: $**
**Claimed Future Medical: $**
**Claimed Past Wage Expense: $**
**Claimed Future Wage Expense: $**
Plaintiff's Economist: $

Defendant's Economist: $

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Joseph Lavi, Beverly Hills, CA
Defendant: Joan M. Cotkin, Los Angeles, CA

JUDGE: Ernest Hiroshige

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: 70

**PRIMARY STATUTE OR GROUND: Disability Discrimination-ADA**
**SECONDARY STATUTE OR GROUND:**
**GENERAL ENTITY TYPE: Service Industry**

Exhibit O, Page 96

ISMEN v. BEVERLY HOSPITAL, JVR No. 810265 (2008)

**SPECIFIC ENTITY TYPE: Health Services**
**ADVERSE EMPLOYMENT ACTION: Termination, Failure to accommodate**
**AMOUNT OF AWARD AFTER STATUTORY LIMIT: $**
**ATTORNEY'S FEES: $**
**DAMAGES:**
Past Medical: $

Future Medical: $

Past Wage: $

Future Wage: $

Pain and Suffering: $

Other: $

Total: $

Punitive: $1,180,164

Hedonic: $

Other: $

Interest: $

Loss of Services: $


**FACTS:**
A female medical records clerk over the age of 70 sued the defendant hospital claiming disability discrimination and retaliation
in violation of the federal laws. The plaintiff alleged that the defendant failed to accommodate her preexisting back condition
due to a work related injury and wrongfully terminated her in retaliation for her workers' compensation claims. The defendant
denied the allegations and claimed that the plaintiff was terminated since her work restrictions were inconsistent with the job's
physical requirements and duties.


Jury Verdict Research
COURT:

---

**End of Document**                              © 2013 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit O, Page 97

# EXHIBIT P

FILED
Superior Court of California
County of Los Angeles

FEB 05 2016

Sherri R. Carter, Executive Officer/Clerk
by _Michael Rivera_ Deputy
Michael Rivera

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

BEASLEY,

      Plaintiff,

vs.

EAST COAST FOODS,

      Defendant

Case No.: BC509995

DEPT: 53

JUDGE: STEVEN J. KLEIFIELD

RULING ON MOTION FOR ATTORNEY FEES AND
EXPERT WITNESS FEES

**RULING ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPERT WITNESS FEES**

    Plaintiff moves for an award of attorneys' fees and expert witness fees under Gov. Code section 12965(b) after obtaining a verdict of $1,661,800 in this FEHA case. The Court heard argument on January 5, 2016 and took the matter under submission. After considering the papers and the argument of counsel, the Court GRANTS the motion and makes the following award in favor of plaintiff and against defendant:

    ATTORNEYS' FEES:    $1,514,140.00

    EXPERT WITNESS FEES:    $26,775.00

    <u>ATTORNEYS' FEES</u>

    Plaintiff seeks $4,165,450 in attorney's fees, which is the claimed lodestar plus a 2.0 multiplier.

    Plaintiff submits evidence that the following hours were spent in prosecuting the case:

RULING ON MOTION FOR ATTORNEY FEES AND EXPERT WITNESS FEES - 1

Lee Franck:                     1603.5 hours

Scott Cummings:                 1150 hours

William Jason Jackson:    649 hours

Keith Rasher:                   155 hours as an attorney, 5 hours as a law clerk

Tielle Shu:                     20 hours as an attorney, 15 hours as a law clerk


Plaintiff seeks hourly rates for this work as follows:

Lee Franck/Scott Cummings (partners):     $650/hour

William Jason Jackson (associate):        $400/hour

Keith Rasher (associate):                 $300/hour

Keith Rasher (paralegal):                 $180/hour

Tielle Shu (associate):                   $300/hour

Tielle Shu (paralegal):                   $180/hour

Plaintiff supports his fee request with declarations from the five attorneys, detailing the hours spent, their claimed hourly rates, and evidence in support of their claim of reasonableness of the amounts requested. Included in such evidence is the "Laffey matrix," which has been referenced in at least one reported California appellate opinion, Syers Properties III, Inc. v. Rankin (2014) 226 Cal. App. 4th 691.


RULING ON MOTION FOR ATTORNEY FEES AND EXPERT WITNESS FEES - 2

1    Plaintiff also submits declarations from Carney Shegarian, Mark Weidmann, and Jual

2    Reyes, other attorneys who practice in the same area of law, attesting to the quality of the attorneys' reputation and

3    skills, as well as the reasonableness of the hourly fees requested.

4

5    Plaintiff requests that the Court take judicial notice, pursuant to "Evidence Code sections

6    450 and 451" (not 452, the permissive judicial notice section), of three articles regarding attorney's fees, the "Laffey

7    Matrix," and a Sacramento Superior Court ruling on a FEHA attorney's fees motion.  The objections to the request

8    for judicial notice of the three articles and the Laffey Matrix are sustained.

9

10    The Court has searched in vain for a lodestar calculation in the points and authorities in

11    support of the motion.  Presumably, the claimed lodestar is ½ of the $4,165,450, or $2,082,725.

12

13    Defendant argues that the hourly rates are too high.  With respect to Scott Cummings and

14    Lee Franck, who claim a rate of $650/hour, defendant argues that the rate should be $500/hour.  It refers the Court to

15    an attorney's fee award to Cummings and Franck in Vasquez v. LACMTA, BC464335, where in March 2014 Judge

16    Brazile awarded fees of $500/hour to Mr. Cummings and Mr. Franck (Exh. 15).  Judge Dalila Corral Lyons, in the

17    same case, awarded attorney's fees incurred on appeal in the same case at the rate of $500/hour in September 2015

18    (Exh. 17).

19

20    While it would be a simple matter to merely adopt the hourly rate used by Judges Brazile

21    and Lyons, the Court also looks to the evidence submitted in support of and in opposition to the motion in this case.

22    Mr. Cummings and Mr. Franck both declare that the $650/hour rate is "well within the fair and reasonable rate for

23    an employment attorney with my level of background, skill and experience in employment law."  In their

24    declarations, three prominent plaintiff-side employment attorneys state under oath that the $650/hour rate is

25    "standard in the employment law community for an attorney with his [Mr. Cummings' or Mr. Franck's] level of

26    skill, knowledge and expertise," and is "well within the proper range of hourly rates charged by attorneys in

27    employment law."

28

29    In his declaration, Mr. Mertens, also an experienced employment law trial attorney, sets

30    forth the fees he personally charges and has requested in the past, which are less than $650/hour.  He sets forth no

31    evidence, however, as to the reasonableness of hourly rates generally in the relevant community.  Unlike plaintiff,

32

RULING ON MOTION FOR ATTORNEY FEES AND EXPERT WITNESS FEES - 3

1    defendant submits no other declarations regarding the reasonable range of hourly rates for attorneys similarly
2    situated as Mr. Cummings and Mr. Franck.
3
4         The essentially uncontroverted evidence supports the claim that $650 would be within the reasonable range
5    of hourly rates. This is not to say, however, that Mr. Cummings and Mr. Franck should necessarily be compensated
6    at the $650/hour rate. Mr. Cummings and Mr. Franck spent a combined 2753.5 hours on this case as of the filing of
7    the motion. They are partners in the firm and are requesting partner rates. One of the main criticisms of defendant
8    is that much of the work they performed was not "partner-level work," and therefore should not be compensated as
9    such.
10
11        Plaintiff responds to this argument by stating "[c]ourts have consistently held that
12   arguments that a cheaper employee 'could have' done the work is not a proper consideration in a fee award." Reply
13   papers, at 2:2-4. The two cases he cites do not stand for this proposition, however. In Moreno v. City of
14   Sacramento (9th Cir. 2008) 534 F.3d 1106 the court stated that the district court erred by considering the
15   impermissible factor of whether another firm could have staffed the case differently, i.e., assigned a less skilled
16   attorney to perform document review. The court of appeal held that it is appropriate, however, to consider the skill
17   required to perform particular tasks. Building a Better Redondo Beach, Inc. v. City of Redondo Beach (2012) 203
18   Cal. App. 4th 852 implies that "whether an associate should have been assigned tasks performed by a partner" is
19   something that a trial court may properly consider.
20
21        When Mr. Shegerian, et al. state that the $650/hour rate is "standard," the question arises
22   "standard for what?" Mr. Shegerian, a well-respected plaintiff's employment attorney, may charge $650/hour (or
23   $700) for his time, which is primarily spent preparing for and trying the case. Much of the other pretrial work in his
24   firm would be performed by associate attorneys at lower hourly rates. It would be unfair to defendant to require it to
25   pay $2600 for four hours of a partner assembling an exhibit notebook. Taking into account the variety of tasks
26   performed by Mr. Cummings and Mr. Franck, a $500/hour overall rate seems fairer. The Court is not second-
27   guessing any decisions made regarding law firm staffing or economics. Mr. Cummings and Mr. Franck were free to
28   decide what tasks to perform or to delegate. The Court settles on the $500/hour rate as being a fair and reasonable
29   rate within the range of acceptable fees, which would reasonably compensate them for all of the work they
30   performed.
31
32

RULING ON MOTION FOR ATTORNEY FEES AND EXPERT WITNESS FEES - 4

Defendant proposes numerous "adjustments" to the number of hours spent and fees incurred. Decl. of Glen Mertens, Exh. 20. The Court makes the following observations:

Defendant objects to all of William Jackson's time being compensated as attorney time, when much of his time was spent tracking down witnesses and driving. Mr. Jackson works for Cummings and Franck as an associate attorney and investigator. Much of the time spent by Mr. Jackson was in investigator type work and ought not to be compensated as attorney time. The fact that an investigator may be licensed as an attorney does not mean his time should be compensated as attorney time. Attorney skills, however, certainly do come into play in interviewing witnesses. Plaintiff requests compensation for 649 hours at $400/hour for Mr. Jackson. The Court will award fees for Mr. Jackson's time at $250/hour.

Defendant notes that plaintiff claims to have incurred $70,610 to prepare and organize billing sheets in support of the motion. No explanation is offered as to why such a huge sum was incurred to perform this task. This amount is disallowed.

As for attorneys Rasher and Shu, newly-minted attorneys, the Court will award fees for their attorney time at $250/hour.

The lodestar is therefore calculated as follows:

Lee Franck:          1603.5 hours at $500/hour = $801,750

Scott Cummings:      1150 hours at $500/hour = $575,000

William Jason Jackson:   649 hours at $250/hour = $162,250

Keith Rasher:        155 hours as an attorney at $250/hour = $38,750

                     5 hours as a law clerk at $100/hour = $500

Tielle Shu:          20 hours as an attorney at $250/hour = $5000

RULING ON MOTION FOR ATTORNEY FEES AND EXPERT WITNESS FEES - 5

1     15 hours as a law clerk at $100/hour = $1500

2

3

4     Equals $1,584,750 minus $70,610 disallowed billing preparation = $1,514,140.

5

6     MULTIPLIER

7

8     Plaintiff requests a 2.0 multiplier.  Defendant suggests a .75 multiplier.

9

10    Plaintiff's request for a multiplier is based on the contingent nature of the award, the

11    result obtained, the quality of representation, the novelty and difficulty of the questions involved, the skill displayed,

12    the extent to which the case precluded other employment, and delay in receipt of payment.

13

14    The fact that the case is taken on a contingent fee basis does not, in and of itself, entitle

15    the prevailing plaintiff to a multiplier in the fee award.  It is a rare employment case that is not taken on a contingent

16    fee basis.  Indeed, the inability of a plaintiff to pay legal fees is the very reason for the fee shifting provided by

17    FEHA.

18

19    The Court is not convinced that the case precluded other employment.  There was no

20    explanation as to how potential clients could not have been initially interviewed by others and the firm potentially

21    retained.

22

23    The Court does not believe that there was much in the way of novelty or difficulty with

24    respect to any of the legal questions involved.  Plaintiff points out the debates over the negligent retention cause of

25    action, which played very little of a role in the case.

26

27    The factual issues were not unusually complex, either as to liability or damages. The fact

28    that plaintiff had pre-existing schizophrenia did not make the damage issues unusually complex.

29

30    The Court declines to apply a multiplier.

31

32

RULING ON MOTION FOR ATTORNEY FEES AND EXPERT WITNESS FEES - 6

1    In the Court's view, certain events caused the litigation to be so protracted. First was
2    defendant's either inability or refusal to participate in discovery and be forthcoming with information. Plaintiff
3    claims that twenty discovery motions had to be brought to compel defendant to comply with its discovery
4    obligations. Even after the Court issued discovery orders, additional motions were brought due to defendant's
5    failure to comply with Court orders, which resulted in evidentiary or issue sanctions, and which greatly hampered
6    plaintiff at trial. While the Court has not examined the record to confirm the exact number of discovery motions, the
7    Court does recall plaintiff's counsel having to return over and over again when defendant was not complying with
8    its discovery obligations.

9

10    Second, defendant listed numerous potential witnesses, so that plaintiff had virtually no
11    choice but to take twenty nine depositions. Defendant propounded fifteen sets of discovery to plaintiff.

12

13    Third, the evidence at trial revealed that defendant procured its employees to not be
14    forthcoming about what occurred in the workplace. Numerous employees testified at trial that they had not told
15    either the truth or the whole truth during their depositions, due to pressure and threats from defendant's manager.
16    This greatly increased plaintiff's counsel's work load, as they could leave no stone unturned in seeking truthful
17    testimony.

18

19    Defendant is largely responsible for the enormous amount of time that was spent
20    prosecuting the case. The consequence of doing so is that it is responsible for the fees incurred for the enormous
21    time that was necessarily spent. That amount is $1,514,140.

22

23

24    EXPERT FEES

25.

26    Plaintiff requests an award of expert fees in the total sum of $26,775.00 as follows:

27

28    Dr. Craig Snyder         $16,400

29

30    Dr. Franklin Milgrim              $9375

31

32    Dr. Suzanne Dupee              $1000

RULING ON MOTION FOR ATTORNEY FEES AND EXPERT WITNESS FEES - 7

1
2          Mr. Franck states in his declaration in support of the motion that Cummings and Franck
3   paid all these bills, but for some reason did not attach copies of any bills or receipts that he says are available if
4   needed. The bills were then attached to the reply. There is no dispute that these fees were incurred and paid. The
5   Court agrees with plaintiff that any inconsistency in Dr. Snyder's trial testimony does not affect the fact that the
6   expert fees were reasonably incurred and paid, and that the costs should be reimbursed to plaintiff.
7
8          The request for an award of expert witness fees in the sum of $26,775.00 is GRANTED.
9
10          The clerk is directed to enter the costs, including expert witness fees and attorney fees into the judgment
11  that was entered on October 5, 2015.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

RULING ON MOTION FOR ATTORNEY FEES AND EXPERT WITNESS FEES - 8

# EXHIBIT Q

## U.S. District Court — Judicial Caseload Profile

**CALIFORNIA CENTRAL**

| | | | 12-Month Periods Ending | | | | | | Numerical Standing Within | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Sep 30 2014 | Sep 30 2015 | Sep 30 2016 | Sep 30 2017 | Sep 30 2018 | Sep 30 2019 | U.S. | Circuit |
| **Overall Caseload Statistics** | | Filings [1] | 16,716 | 16,485 | 16,633 | 16,420 | 17,765 | 17,977 | | |
| | | Terminations | 17,001 | 16,686 | 16,530 | 16,554 | 16,149 | 17,356 | | |
| | | Pending | 12,848 | 12,562 | 12,689 | 12,539 | 14,208 | 14,764 | | |
| | | Percent Change in Total Filings Current Year Over Earlier Year | 7.5 | 9.1 | 8.1 | 9.5 | 1.2 | | 48 | 6 |
| | | Number of Judgeships | 28 | 28 | 28 | 28 | 28 | 28 | | |
| | | Vacant Judgeship Months [2] | 6.3 | 12.0 | 31.1 | 55.0 | 72.0 | 94.7 | | |
| **Actions per Judgeship** | **Filings** | Total | 597 | 589 | 594 | 586 | 634 | 642 | 21 | 5 |
| | | Civil | 520 | 520 | 526 | 510 | 548 | 554 | 15 | 4 |
| | | Criminal Felony | 45 | 37 | 40 | 43 | 54 | 57 | 78 | 10 |
| | | Supervised Release Hearings | 32 | 33 | 28 | 34 | 33 | 31 | 53 | 12 |
| | Pending Cases [2] | | 459 | 449 | 453 | 448 | 507 | 527 | 39 | 7 |
| | Weighted Filings [2] | | 546 | 542 | 567 | 570 | 627 | 681 | 13 | 3 |
| | Terminations | | 607 | 596 | 590 | 591 | 577 | 620 | 19 | 4 |
| | Trials Completed | | 15 | 13 | 11 | 12 | 11 | 11 | 70 | 9 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 13.3 | 15.8 | 17.8 | 14.0 | 12.8 | 13.7 | 81 | 13 |
| | | Civil [2] | 5.3 | 5.5 | 4.9 | 4.9 | 5.0 | 4.9 | 3 | 1 |
| | From Filing to Trial [2] (Civil Only) | | 20.0 | 20.4 | 20.5 | 18.9 | 21.3 | 22.1 | 11 | 2 |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [2] | | 620 6.2 | 560 5.6 | 534 5.4 | 538 5.6 | 549 5.0 | 604 5.4 | 33 | 2 |
| | Average Number of Felony Defendants Filed per Case | | 1.6 | 1.6 | 1.5 | 1.5 | 1.6 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | 39.6 | 44.0 | 53.2 | 47.4 | 41.3 | 52.4 | | |
| | | Percent Not Selected or Challenged | 36.2 | 47.2 | 52.0 | 45.2 | 43.0 | 50.5 | | |

| 2019 Civil Case and Criminal Felony Defendant Filings by Nature of Suit and Offense | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | Total | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 15,514 | 859 | 635 | 1,693 | 89 | 729 | 790 | 1,568 | 815 | 1,265 | 5,154 | 18 | 1,899 |
| Criminal [1] | 1,579 | 18 | 573 | 161 | 151 | 359 | 80 | 34 | 13 | 67 | 13 | 37 | 73 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings by "Nature of Offense" do not.

[2] See "Explanation of Selected Terms."

# PROOF OF SERVICE

*Jose Martinez v. Airport Terminal Services, Inc., et al*
Case No. 8:20-cv-426

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made.  At all times herein mentioned I have been employed in the County of Orange in the office of a member of the bar of this court at whose direction the service was made.  My business address is 695 Town Center Drive, Suite 1500, Costa Mesa, CA  92626.

On March 2, 2020, I served the following document(s):

**DECLARATION OF MARK F. LOVELL IN SUPPORT OF DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as follows:

☒    **BY MAIL:**  I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐    **BY MAIL:**  I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at Park Tower, Fifteenth Floor, 695 Town Center Drive, Costa Mesa, CA 92626.

☐    **BY OVERNIGHT DELIVERY:**  I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., Costa Mesa, California.  I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☐    **BY MESSENGER SERVICE:** (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

☐    **BY FACSIMILE:** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with:

☐    the written confirmation of counsel in this action:

☐    [Federal Court] the written confirmation of counsel in this action

41949993_1.docx

1

Case No. 8:20-cv-426

and order of the court:

☐   **BY CM/ECF:**  With the Clerk of the United States District Court of California, using the CM/ECF System.  The Court's CM/ECF System will send an e-mail notification of the foregoing filing to the parties and counsel of record who are registered with the Court's CM/ECF System.

☒   **(Federal)**   I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

☐   **(Federal)**   I declare that I am a **member** of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on March 2, 2020, at Costa Mesa, California.

_____
Lisa Sles

41949993_1.docx

2
PROOF OF SERVICE

Case No. 8:20-cv-426

1

## SERVICE LIST

2

3    Brock & Gonzales, LLP                    Attorneys for Plaintiff
     Timothy J. Gonzales, Esq.                SCOTT DEWEY
     D. Aaron Brock, Esq.

4    Christopher P. Brandes, Esq.
     6701 Center Drive West, Suite 610

5    Los Angeles, CA  90045
     Telephone:  310.294.9595

6    Facsimile:   310.961.3673

7

8                                                                          41949993.1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28